CHARLES A. BLOOMFIELD, PROSECUTOR, v. BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF MIDDLESEX ET AL.

Submitted November 20, 1906—Decided February 25, 1907.

1. The certificate of the secretary of state, under his official seal, that a bill on file in his office has been passed by the legislature and approved by the governor, is in all suits *inter partes* conclusive evidence that such bill has become a law, so that no proof can collaterally establish the contrary.

2. A prosecutor in *certiorari*, under a rule obtained for that purpose, took proofs tending to show that a law thus filed, attested and certified was approved by the governor sixty days after the legislature had finally adjourned, the purpose of such proof being that this court should adjudge such law to be null if satisfied that the mandate of article 5, section 7, of the constitution, touching the executive approval of bills, had not been observed respecting its approval.  *Held,* that for the purpose proposed the evidence so taken was incompetent.

3. The doctrine of *Pangborn* v. *Young,* 3 *Vroom* 29, applied.

4. *Quære.* Whether the doctrine of that case, which was one of collateral attack, is applicable to ' the direct method of attacking enrolled laws provided by *Gen. Stat.,* p. 3192.

5. The act of June 12th, 1906 (*Pamph. L.,* p. 685), validating certain corporate acts of boards of chosen freeholders, is a general law, embracing a single object that is expressed in its title, and does not deprive any party of any remedy for enforcing a contract.

---

On *certiorari.*

Before Justices GARRISON, GARRETSON and SWAYZE.

For the prosecutor, *Willard P. Voorhees.*

For the defendant, *Alan H. Strong.*

The opinion of the court was delivered by

GARRISON, J. The validity of certain proceedings of the board of chosen freeholders touching the construction of a bridge and the award of a contract therefor being before this court on *certiorari*, a bill was passed by the legislature making lawful any bridge theretofore erected by any board of chosen freeholders and validating contracts for the erection of the same that had been performed by the contractors. *Pamph. L.* 1906, *p.* 685.

The prosecutor in *certiorari*, conceiving that this bill had not constitutionally become a law by force of executive approval, for the reason that such approval was not given until after the final adjournment of the legislature, applied to the court for leave to take evidence to substantiate the facts upon which his foregoing contention was based. Leave was given to take such evidence, reserving, however, the question of its competence until the final decision of the case. The prosecutor has now taken such testimony as he desired to take, and the matter having been finally argued the question of the competence of such testimony is now before us.

The prosecutor claims that the testimony shows that the bill in question was passed by the senate on April 3d, 1906, and by the house on April 12th, 1906; that it was delivered to the governor on April 13th, on which day the legislature finally adjourned, and that the bill received the approval of the governor on June 12th, 1906.

The bill itself, which is chapter 312 of the laws of 1906 (*Pamph. L., p.* 685), was made an exhibit by means of a copy certified by the secretary of state under the seal of his office to be a true copy of an act passed by the legislature of this state, and approved by the governor on the 12th day of June, A. D. 1906, as taken from and compared with the original on file in his office. There is no contention that the act thus certified is not a copy of the original act, or that the original act is not on file in the office of the secretary of state, attested in the ordinary way. The offer of the prosecutor is to show by the testimony now propounded that the constitutional mandate respecting the mode of enacting laws was not ob-

served in the case of such act; or, to be more specific, that under article 5, section 7, of the constitution, the said act did not become a law by the approval of the governor, because such approval was not given until sixty days after the final adjournment of the legislature, and this offer is made to. the end that the said law may be adjudged by us to be a nullity.

The preliminary question, therefore, is whether, for the purpose proposed, evidence of the foregoing facts will be received; or, to put it in another form, whether a legislative bill, filed with the secretary of state regularly attested and duly certified to have become a law, may be collaterally shown not to have become a law.

The importance of this question can hardly be overestimated, from whichever standpoint it may .be regarded. That obedience need be rendered by anyone to a rule of conduct that has not constitutionally become a law is, at first blush, a somewhat startling proposition, yet scarcely more so than the proposition that the existence or non-existence of a law may in a given number of cases, civil or criminal, be made to depend, not upon any rule of uniformity, but upon the *quantum* and character of the testimony adduced in each particular case and its effect for the purposes of such case upon the judicial mind.

The magnitude of the change that would come over our judicial system by the introduction of such a practice may be gathered from the consideration that the laws that would be thus opened to indirect attack in suits *inter partes* are to be numbered almost by the thousands. Between the years 1884 and 1905, alone, the number of bills thus approved by the executive after the legislature had finally adjourned was one thousand three hundred and fifty-nine, embracing almost every conceivable topic of legislation, and both before and since these dates bills that were similarly approved considerably swell the general total.

From these figures alone the practical importance of the preliminary question that has been referred to us must be clearly apparent. It must also be apparent that the question at issue, being at bottom a matter of evidence, must be decided

solely with reference to the established principles of that branch of legal science. Fortunately for our sense of responsibility, such principles have already been established in a manner that is binding upon this court. In the case of *Pangborn* v. *Young,* 3 *Vroom* 29, Chief Justice Beasley, in an opinion evincing the gravest consideration, held that it was not competent for this court to admit evidence to show that a bill, as actually passed, was variant from the attested act on file with the secretary of state and certified by him under the seal of his office. The concrete question was the right of the court in that case to receive as evidence the minutes of the two houses kept under the requirement of the constitution, but the decision of that question was placed by the opinion on the broad ground that upon principles fundamental to the law of evidence a statute properly attested by seal was, "as a method of evidence, equal and equivalent to the copy of a judgment formally exemplified." "No English judge," said the learned Chief Justice, "as far as I am aware, has ever dropped a hint that as an instrument of evidence a statute does not stand on the same level with a judgment."

"The same common law principle," he continues, "which gives the quality of conclusiveness to a parliamentary roll, must therefore, as a part of the unquestionable law of this state, and which this court has no choice but to enforce, impart the same force to an enrolled act of the legislature of this state.

"My general conclusion, then, is that, both upon the grounds of public policy and upon the ancient and well-settled rules of law, the copy of a bill attested in the manner above mentioned, and filed in the office of the secretary of state, is the conclusive proof of the enactment and contents of a statute of this state, and that such attested copy cannot be contradicted by the legislative journals, or in any other mode."

Dealing more specifically with the proposition to show by extrinsic evidence that a bill authenticated as is the present bill, was not in fact duly enacted, the Chief Justice further said :

"The court cannot try issues of fact; nor, with any propriety, could the existence of statutes be made dependent on the result of such investigations. With regard to matters of fact, no judicial unity of opinion could be expected, and the consequence would necessarily be that the conclusion of different courts, as to the legal existence of laws, from the same proofs, would be often variant, and the same tribunal which to-day declared a statute void might to-morrow be compelled, under the effect of additional evidence, to pronounce in its favor. The notion that the courts could listen upon this subject to parol proof is totally inadmissible."

The precise weight and exact import to be accorded to this decision appear conclusively in the case of *Passaic v. Stevenson,* 17 *Vroom* 173, in which the writers of both the prevailing and the dissenting opinion in the Court of Errors and Appeals unite in their approval of Pangborn *v.* Young, and in their understanding of the doctrine established by it. Mr. Justice Van Syckel, speaking for the court, said that "it had been declared by the Supreme Court of this state, in *Pangborn v. Young,* 3 *Vroom* 29, that an enrolled statute of this state carries within itself conclusive evidence of its own authenticity." And Mr. Justice Dixon, although dissenting upon other matters, said as to this point: "Two theories exist in this country touching the effect as evidence of a document found in the legal depository of laws regularly certified by the usual authorities to have become a law. One is that such document is *prima facie* a law, but that the courts will receive other evidence, such as legislative journals, to ascertain whether the mandates of the constitution as to the mode of enacting laws were observed regarding it, and if they were not will adjudge it null. The other is that such a document is conclusive evidence of its being a law, so that no proof can collaterally establish the contrary. This latter is the theory which has been adopted in New Jersey (*Pangborn v. Young,* 3 *Vroom* 29), and it has my entire concurrence."

Twenty years later the same court, speaking through Mr. Justice Knapp, reaffirmed its approval of the doctrine that an enrolled statute of this state is conclusive proof of its enact-

ment, and that an attested copy of such statute cannot be contradicted in any mode. *Standard Underground Cable Co.* v. *Attorney-General*, 1 *Dick. Ch. Rep.* 270.

These decisions of the court of last resort approving and illustrating the doctrine enunciated in Pangborn *v.* Young constrain us to deny the right of the prosecutor in the present case to introduce evidence to contradict the certified copy of the attested statute of June 12th, 1906, and require us to give conclusive effect to such attestation as against such collateral attack.

It may not be inappropriate to draw attention to the fact that after the decision of Pangborn *v.* Young the legislature of this state passed an act entitled "An act providing for decreeing and making known that certain laws and joint resolutions have become inoperative and void." *Pamph. L.* 1873, *p.* 27. This act, which now appears under the title "Statutes," in the compilation of General Statutes (*p.* 3192), provides a direct method of testing in this court whether a given law on file with the secretary of state has been passed or approved as required by the constitution, and authorizes the reception of evidence for that purpose. By force of its provisions any two citizens of this state, within one year after any law shall have been filed with the secretary of state, may present a petition to the Supreme Court setting forth the facts showing that such law was not duly approved as required by the constitution, and thereupon the said court is given jurisdiction and power to proceed in a summary way, and under a procedure especially provided, to receive evidence and to render a judgment dismissing said petition or decreeing the said law to be null and void.

How far the remedy thus provided by the legislature may be efficient for the accomplishment of its object, in view of the principles of evidence we have been considering, can be told only when it shall have been tested. Its pertinence to the pending litigation is its recognition by the legislature of the necessity of express authority to enable the courts to receive evidence that contradicts an enrolled statute and the propriety in such case of a direct attack, the result of which shall oper-

ate uniformly throughout the entire state. It has no other bearing, that I can see, upon the question of collateral attack, with which alone we are now concerned.

For the reasons that have been stated, the evidence taken by the prosecutor under the rule obtained by him cannot be received.

The act of June 12th, 1906, being before us as a public law, the prosecutor contends that such act is unconstitutional, on the following grounds—*first,* that it embraces more than one object; *second,* that its title is misleading; *third,* that it is a special law regulating the internal affairs of counties; *fourth,* that it takes away a remedy for enforcing a contract.

No reason that I have been able to find in the printed case raises these questions. Inasmuch, however, as the point is not taken by the defendant's counsel, owing doubtlessly to the unusual manner in which the issues were interjected into the cause, we have considered them as if regularly presented.

The first of these objections is not tenable. The object of the act is single, viz., to validate corporate action. The respects in which such action is to be validated are in the erection of a bridge, the contract for such erection and the means of payment therefor. Whatever apparent duality of object the title suggests is due to the figurative language by which the bridge is referred to as validated. This, of course, means the corporate action in this regard. The validity of a bridge would refer to the strength of its construction, which, of course, was not the meaning here.

The foregoing objects are all expressed in the title, between which and the body of the act no discrepancy exists that is not necessitated by the condensed character of the title. What the constitution requires to be expressed in the title of an act is its object, not its product. *Moore* v. *Burdett,* 33 *Vroom* 163.

The objection that the act is not general is covered by the principles applied by the Court of Errors and Appeals to like antecedent conditions in the cases of *Jersey City* v. *Green,* 13 *Vroom* 627, and *Hermann* v. *Guttenberg,* 34 *Id.* 616. The distinction between these cases and *Freeholders* v. *Buck,* 22

*Id.* 155, is that pointed out by the Chancellor in the last-mentioned case, viz.: "The law does not embrace the payment of all certificates of indebtedness theretofore lawfully issued to pay for similar improvements."

The fourth objection is not valid in point of fact. The act in question does not "deprive a party of any remedy for enforcing a contract," which is the constitutional prohibition.

The contention of the prosecutor that by this act "the law-making power oversteps its bounds and deprives the county and its taxpayers from enforcing remedies possessed by them for enforcing this contract when it was made," is based upon a misconception of the constitutional limitation, and fails, also, to take into account the power of the legislature to impose upon its subordinate agencies the performance of obligations resting in good morals alone, a thing it cannot under like circumstances do in the case of individuals.

Our conclusion is that the legislative act in question is constitutional in form and effect, and that in conformity to its requirements the proceedings brought by the prosecutor into this court must be affirmed.