IN THE MATTER OF THE PETITION OF THE ATTORNEY-
GENERAL, PRAYING THAT THE STATUTE PUBLISHED
AS CHAPTER 184 IN THE SESSION LAWS OF 1923 BE
DECREED NULL AND VOID.

Argued June 29, 1923—Decided July 13, 1923.

1. In a proceeding brought under the act of 1873 (*Comp. Stat.,
p.* 4978), praying an adjudication that an act of the legisla-
ture was not duly passed and is null and void, because of the
fact that it received in the house of assembly a less number
of votes in favor of its passage than is required by the con-
stitution, the court must be satisfied by clear and convincing
evidence of the existence of that fact in order to justify a
decree nullifying the statute.

2. Where a constitutional provision, regulating legislative procedure
in the enactment of a statute, is susceptible of either of two
constructions, and one of these constructions is adopted by the
house in which the procedure is required to be followed, the fact
that the other construction is the more reasonable one will not
justify a court in holding that the constitutional requirement has
been violated in the enactment of the statute.

Before GUMMERE, CHIEF JUSTICE, and Justices TREN-
CHARD, PARKER, BERGEN, KALISCH, BLACK and KATZEN-
BACH.

For the petition, *William Newcorn,* assistant attorney-gen-
eral.

*Contra, Maja L. Berry.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.   The proceeding before us was
instituted by the attorney-general, upon the instruction of
the governor of the state, under the authority of an act of
the legislature passed in 1873, and entitled "An act provid-
ing for decreeing and making known that certain laws and
joint resolutions have become inoperative and void."   *4 Comp.*

*Stat., p.* 4978. Briefly, the statute of 1873 provides that, if at any time within one year after any law shall have been approved and filed in the office of the secretary of state the governor shall have reason to believe that it was not duly passed by both houses of the legislature, he may, in his discretion, direct the attorney-general to present a petition to this court, setting forth the facts and circumstances and praying that the said law may be declared a nullity; and that thereupon this court, if *satisfied* that the law mentioned in the petition was not duly and constitutionally passed, shall decree the same to be null and void.

The purpose of the present petition is to procure from this court a declaration that chapter 184 of the laws of 1923, entitled "An act to amend an act entitled 'An act to amend an act entitled "An act to establish a state highway system, and to provide for the improvement, betterment, reconstruction, resurfacing, maintenance, repair and regulation of the use thereof," ' approved March thirteenth, one thousand nine hundred and seventeen, which amendment was approved April sixth, one thousand nine hundred and twenty," was not duly passed by both houses of the legislature, and a decree for its annulment.

The act in question originated in the senate. It was passed by that body and sent to the house of assembly. The latter house also passed it and returned it to the senate and that body sent it to the governor for his approval. The governor returned it to the senate, with a veto message; and that body, after the expiration of twenty-four hours, passed it over his veto, and then sent it to the house of assembly for action there. On the same day upon which the assembly received it, with the governor's message, it was called up and voted upon, and the minutes of the assembly show that it received the votes of thirty-five members, out of a total membership of sixty, in favor of its passage, notwithstanding the objections of the governor.

The grounds upon which his excellency directed the attorney-general to institute this proceeding are, first, that

the minutes of the assembly with relation to its action on the veto message are incorrect, and that, in fact, less than a majority of the whole membership voted in favor of passing the bill over his veto; and second, that the assembly, in acting upon the veto message, and reconsidering the bill, upon the same day upon which it received the bill and the governor's message from the senate, violated section 7, article 5 of the constitution of the state.

Taking up the first ground of attack upon the bill: The situation developed by the evidence taken under the petition was that twenty-eight of the members concededly voted for the bill. Seven other members, however, who were recorded in the affirmative, were reported to the "Newark Evening News" (by one of its staff, who was present in the assembly chamber when the vote was taken) to have been absent from the chamber at that time and not to have voted upon the bill. This statement was published in the "News" on the following day and was the primary cause of the governor's action. In the taking of the testimony in support of the petition the printed story was verified by the "News" reporter when called to the witness-stand by the assistant attorney-general to this extent, viz., that he had personally checked up the vote while it was being taken; that, as the respective names of each of these seven members was called, no response was given; that none of them were in their seats and that a careful observation made by the witness failed to disclose the presence of any of them in the chamber. These several members were then successively placed upon the witness-stand by the assistant attorney-general, and each of them examined under oath with relation to his action or non-action upon the reconsideration of the bill. One of them testified that he was absent from the assembly chamber and did not vote. Two others stated that they were present in the chamber, but were uncertain as to whether they voted on the bill or did not vote. Each of the other four members testified that he was present in the assembly chamber at the roll-call on this bill, and each of them stated positively that he voted in favor of passing

it over the governor's veto. In the face of the testimony of these four members it would appear that the "News" reporter was mistaken in the statement made to and published by his paper. We do not doubt that the mistake was an honest one and its occurrence is easily understood, in view of the unusual disorder (as the testimony shows) which existed, not only among members, but among visitors who were present upon the floor of the chamber during the call of the roll. It seems hardly necessary to add, in view of the testimony referred to, that we cannot declare that we "are satisfied" (as the act of 1873 requires us to be, in order to justify a decree that a statute is null and void) that the statute under review was not duly passed, *i. e.*, that it did not receive in the house of assembly a majority of the votes of the whole membership of sixty, as required by the constitution. The first ground of attack upon the statute, therefore, fails.

Taking up for consideration the second question presented by the petition, namely, that the house of assembly passed the act over the governor's veto upon the same day upon which it was received from the senate, and in doing so violated section 7, article 5 of the constitution. That section provides that "every bill which shall have passed both houses shall be presented to the governor; if he approve he shall sign it; but if not he shall return it, with his objections, to the house in which it shall have originated, who shall enter their objections at large on their journal and proceed to reconsider it. If, after such reconsideration, a majority of the whole number of that house shall agree to pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by a majority of the whole number of that house it shall become a law; but in neither house shall the vote be taken on the same day on which the bill shall be returned to it."

The argument is that the last clause of this section, by its plain language, prohibits both the house in which the bill originates and the other branch of the legislature from voting upon the bill on the same day that it receives the same,

together with the governor's objections. It must be conceded that there is much force in this argument; but, in order to justify us in yielding to it and declaring that the house of assembly, by reconsidering this bill on the same day on which it received it from the senate, violated this constitutional provision, it must conclusively appear that the provision is not susceptible of any other construction; or, at least, of a construction which would justify the action of the house of assembly. For, if such other construction be permissible, then it cannot be said that it is manifest that the constitutional provision has been infringed upon and that the statute is, therefore, a nullity; for no court will declare an act of the legislature to be void if its unconstitutionality is in anywise doubtful. *Attorney-General* v. *McGuinness, 78 N. J. L.* 346; *In re Public Utility Board,* 83 *Id.* 303, 307. The question, therefore, is whether this constitutional provision is susceptible of a construction which would justify the action of the house of assembly. We think that it is. The mandate is that if the governor does not approve it he shall *return it,* with his objections, to *the house in which it shall have originated;* that the house of origin shall enter the objections at large on its journal and proceed to reconsider it; that if, after such reconsideration, a majority of the whole number of that house shall agree to pass the bill, it shall be *sent,* together with the objections, to the other house. It will be observed that the provision distinguishes the act of the governor from that of the house of origin in this respect, that it defines the action of the former as a return of the bill, and properly so, for he sends it back to the house from which he received it, while it defines the action of that house after it shall have passed the bill as a sending (not a return) to the other house. The distinction between the two words is plain. The return of a thing is the giving or sending it back to the person from whom it was received; whereas the sending of it is normally putting it in the possession of a person other than him from whom it has been received. The presumption is that the framers of the constitution, in using

these words, appreciated the distinction between them, and intended to use them for the purpose of expressing the idea which we have just indicated. The provision then goes on to declare that, when the bill is sent by the house of origin, together with the governor's objections, to the other house, that house shall likewise reconsider it. It has been argued that the word "likewise" conclusively demonstrates that the reconsideration is to be in like manner, that is, under the same procedure prescribed for the house of origin; in other words, it must not only enter the objections of the governor at large on the journal, but also postpone the reconsideration of the bill until at least a day after its reception from the house of origin. If the provision with relation to the postponement of the vote in the house of origin had immediately followed the words "and proceed to reconsider it," it would be difficult to escape the conclusion that the meaning of the constitution with relation to the course of procedure in the other house should be in all respects the same as that prescribed for the house of origin. But the fact of its omission at that point may, we think, fairly be considered to indicate that by the use of the words "likewise be reconsidered" the framers of the constitution intended that the course of procedure in a reconsideration by the second house should be that previously, but not subsequently, prescribed for the house of origin.

We come, then, to a consideration of the meaning of the last clause of the section, namely, that *"in neither house* shall the vote be taken on the same day on which the bill shall be returned to it." The framers of the constitution, as we have already pointed out, appreciating the meaning of words, intentionally differentiated the act of the governor in sending back the bill to the house of origin from that of the house of origin in sending it over to the other house for action in a case where the house of origin has passed it over the governor's veto. It, of course, cannot be doubted that in dealing with this matter the framers of the constitution had in mind the fact that the house of origin might be either the senate

or the general assembly, and that the governor, if he disapproved a bill, would *return* it to the one or the other branch of the legislature, as the situation might require. With this fact presumably in mind, they added the clause under consideration—that "in neither house shall the vote be taken on the same day on which the bill *shall be returned to it"*—thereby seemingly indicating that, no matter in which house the bill originated, the house of origin should not vote upon the governor's veto on the same day on which he returned the bill to that house. If the purpose of the clause was intended to be that which has been suggested by those who claim that the constitutional provision has been violated, the natural expression of that purpose would have been a declaration that neither house should vote upon the bill on the same day that it should be returned or sent to it, that is, returned to it by the governor or sent to it by the house of origin.

The construction we have suggested is that put upon this constitutional provision by the house of assembly. In our opinion, it is at least a permissible one; or, stated more accurately, perhaps, leaves us in doubt whether the construction claimed for it, namely, that neither house can reconsider a bill which has been vetoed by the governor on the same day on which it has received it, either from the governor, or from the house of origin, is the true construction of the provision. In this situation the court cannot declare that the provision was violated by the action of the assembly in reconsidering the bill on the same day on which it received it from the senate.

The petition will be dismissed.