IN THE MATTER OF THE PETITION OF JOHN BORG AND DONALD G. BORG PRAYING THAT CHAPTERS 196 AND 197 OF THE LAWS OF 1939 BE DECLARED NULL AND VOID.

Argued July 31, 1939—Decided September 7, 1939.

Before Brogan, Chief Justice, and Justices Parker, Case, Bodine, Donges, Heher, Perskie and Porter.

For the petitioners, *George F. Losche* (*Louis A. Mounier, Jr.,* on the brief).

For the State of New Jersey, *Joseph Lanigan,* assistant attorney-general (*David T. Wilentz,* attorney-general, on the brief).

The opinion of the court was delivered by

Parker, J. The petition is filed under and by virtue of *R. S.* 1:7-1 *et seq.,* which sections are a revision of the act of 1873 (*Comp. Stat., p.* 4978) entitled: "An act providing for decreeing and making known that certain laws and joint resolutions have become inoperative and void." The attack is on chapters 196 and 197 of the laws of 1939, the first entitled: "An act authorizing the payment of two million dollars ($2,000,000.00), and interest thereon, to the Teachers' Pension and Annuity Fund out of the seven million dollar bond act created by chapter three hundred and eighty-seven of the laws of one thousand nine hundred and thirty-three, when the bonds issued under such act, and the interest thereon, have been fully paid;" and the second: "An act directing the payment out of the treasury of this State to the State

Financial Assistance Commission of the sum of two million dollars ($2,000,000.00.)" The gravamen of the attack on these acts is that by them the legislature has undertaken to create a debt or liability of the state in the amount of more than $100,000 without a popular referendum, in defiance of paragraph 4 of section VI of article IV of the Constitution, which provides *inter alia* that "no such law shall take effect until it shall, at a general election, have been submitted to the people, and have received the sanction of a majority of all the votes cast for and against it at such election."

We are of opinion, and clearly, that as a matter of procedure the present application is misconceived. Turning to the parent act of 1873, which remained unchanged until the Revision of 1937, it will be seen that it authorizes a petition such as the present one only when there is "reason to believe that any such law or joint resolution was not duly passed by both houses of the legislature or duly approved as required by the constitution of this state." It is therefore, we think, obvious that any attack on a statute by virtue of the act of 1873 must perforce have been an attack on the machinery of enactment and not on the provisions of the statute itself; and indeed this seems to have been the uniform view of the bench and bar, as is evident from an examination of the decisions in previous cases where such petitions have been filed. *Bloomfield* v. *Freeholders,* 74 *N. J. L.* 261; 65 *Atl. Rep.* 890; *In re Public Utility Board,* 83 *N. J. L.* 303; 84 *Atl. Rep.* 706; *In re Jaegle,* 83 *N. J. L.* 314; 85 *Atl. Rep.* 214; *In re Ross,* 86 *N. J. L.* 387; 94 *Atl. Rep.* 304; *In re Low,* 88 *N. J. L.* 28; 95 *Atl. Rep.* 616; *In re Chapter* 184 *of* 1923, 98 *N. J. L.* 586; 121 *Atl. Rep.* 736; *In re Hague,* 104 *N. J. Eq.* 31; 144 *Atl. Rep.* 560. The language of the act relative to the procedure is fully quoted in the case of *In re Public Utility Board,* 83 *N. J. L.* (at *p.* 305), and the pertinent clause has already been quoted, viz., "that any such law * * * was not duly passed by both houses of the legislature, or duly approved as required by the constitution of this state."

The very recent case of *In re Miller,* 122 *N. J. L.* 176; 2 *Atl. Rep.* (2d) 522, is not to the contrary, but rests on the

failure to comply with a procedural condition precedent to the enactment of a certain special class of statutes, which condition is as much a part of the machinery of enactment as any of the legislative steps in the enactment of a general statute. Paragraph 9 of section 7 of article IV of the constitution provides that "no private, special or local *bill*" (note the word) "shall be passed, unless public notice of the intention to apply therefor, and of the general object thereof, shall have been previously given. The legislature, at the next session after the adoption hereof, and from time to time thereafter, shall prescribe the time and mode of giving such notice, the evidence thereof, and how such evidence shall be preserved." As appears by the report of the Miller case, *ubi supra,* the legislature did so prescribe; but in that case, the constitutional condition precedent of notice of intention was not complied with, and the attempted procedure of enactment without notice was simply nugatory because of having no foundation on which to rest.

But it is suggested, and indeed argued, that by the Revised Statutes of 1937 the language of the act of 1873 was so changed as that an attack by petition based on unconstitutionality in the provisions of a statute is authorized. But in our opinion the change is merely in form of language and not in legislative intent. The clause as found in *R. S.* 1:7-1 is "has reason to believe that any such law or joint resolution was not duly passed by both houses of the legislature, *or approved by the governor, or otherwise made effective as law in the manner required by the constitution."* It is argued in this case, that for the reasons presently to be discussed, chapters 196 and 197 did not and could not have become "effective as law" for reasons inherent in their provisions. Of this, more presently. But taking the revised language itself as compared with the original language, it seems entirely clear that the revised language still relates exclusively to the matter of passage and enactment, and not to the effect of the statute when so enacted. In connection with the altered clause, it is to be observed that the language of the original statute specifically covers the cases of failure of the bill in question to pass both houses or to be approved by the governor. The

language in the latter case is, "or duly approved as required by the constitution of this state." But a legislative bill may become a law without express executive approval. It must pass both houses in the same form; it must then be submitted to the governor, who within a specified time may do one of three things: he may affix his approval; or he may veto the bill; or it may become a law without his signature by virtue of the constitutional provision that if any bill shall not be returned by the governor within five days (Sunday excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislature by their adjournment, prevent its return, in which case it shall not be a law. Constitution, article V, paragraph 7.

It will be observed that the act of 1873 did not in express terms cover the last situation; and this doubtless accounts for the fact that the revisers changed the language of the act of 1873 by inserting the clause "or otherwise made effective as law in the manner required by the constitution." This language does not extend to questions of constitutionality and constitutional effect arising on the face of the statute itself, but only, as we have already said, to matters of correct procedure in enactment. Any other view would lead to results which might well be described as disastrous to our legal system. For it is safe to say that substantially every attack on the constitutionality of a statute has been a challenge of its "effectiveness" in the particular case, by a party claiming to be injured if the statute is "effective." But in *Allison* v. *Corker*, 67 *N. J. L.* 596 (at *p.* 600), the late Mr. Justice Collins, writing for our Court of Errors and Appeals, said in his opinion: "But I am prepared to go further and hold that an unconstitutional statute is nevertheless a statute—that is, a legislative act. Such a statute is commonly spoken of as void. I should prefer to call it unenforceable because in conflict with paramount law. If properly to be called void, it is only so with reference to claims based upon it. Neither of the three great departments to which the constitution has committed government by the people can encroach upon the domain of another. The function of the judicial department, with respect to legislation deemed unconstitutional, is not

exercised *in rem,* but always *in personam.* The Supreme Court cannot set aside a statute as it can a municipal ordinance. It simply ignores statutes deemed unconstitutional. For many purposes an unconstitutional statute may influence judicial judgment, where, for example, under color of it, private or public action has been taken. An unconstitutional statute is not merely blank paper. The solemn act of the legislature is a fact to be reckoned with. Nowhere has power been vested to expunge it or remove it from its proper place among statutes." That case points the distinction between a statute which under *R. S.* 1:7-1 *et seq.* may be declared no statute at all because never passed, and a statute duly enacted but without efficacy because of constitutional limitations. In the latter case "the function of the courts * * * is not exercised *in rem,* but always *in personam." State* v. *De Lorenzo,* 80 *N. J. L.* 500, 502, cited with approval by the Court of Errors and Appeals in another case of the same name. 81 *Id.* 613. See, also, *In re Public Utility Board,* 83 *Id.* 303 (at *pp.* 306, 307), and *Hyman* v. *Long Branch Kennel Club,* 115 *Id.* 123, 125. In the first case, that of defective passage, the act of 1873 and the revision thereof confer on any two or more citizens, whether interested or not, the right to challenge by petition. To us it is quite inconceivable that the revisers, or the legislature that adopted their work, ever thought of such a radical and extraordinary privilege as that of direct attack at large, upon a statute, because of a claim that though duly enacted it is unconstitutional.

On this branch of the case, therefore, we conclude that as it is plain that the two challenged acts went properly through the constitutional procedure of enactment, they are immune to attack by the present petition.

What has been said should suffice to dispose of the case; but inasmuch as the invalidity of the acts on constitutional grounds was earnestly argued, some intimation of our views on that point may not be out of place, although perhaps *obiter.*

Chapters 196 and 197 of 1939 are identical in their provisions with chapters 88 and 94 of 1938, except as to the amounts of money provided. All hark back to the "seven million dollar bond act" of 1933, *Pamph. L., p.* 1087, which

authorized a state bond issue of that amount, subject to a popular referendum which was had, with a favorable result. The bonds were issued, and four millions in amount have been retired. To meet the balance the state treasurer has in cash $7,709,994.32 and $451,403 in county obligations. The treasury estimates that in 1942 when all the bonds have been paid, there will be a cash balance of over eight millions. Chapter 88 of 1938, *supra*, called for a diversion to the state fund of slightly less than five millions, when the bonds are fully paid, which will be in 1942. Chapter 94 of 1938 makes a corresponding appropriation out of the general state fund. After charging the first five millions against the cash balance estimated for 1942 (all bonds paid) of over eight millions, there remain some three million dollars. Chapter 196 of 1939 provides that two million be deducted from a payment already provided to be made to the Teachers' Pension and Annuity Fund for the fiscal year beginning July 1st, 1939, and that sum retained in the state treasury. Chapter 197 diverts this two million to the State Financial Assistance Commission. Reverting to chapter 196, the two million withheld are to be paid to the Teachers' Retirement Fund in 1942, and the state is to pay that fund three per cent. interest thereon in the meantime.

We can discern no "creation of a debt" here, in the intendment of the constitutional provision. The state incurs no legal obligation by either act. It is dealing with its own creatures, and can give or withhold at pleasure. It gives of its ready cash to one institution and takes the same amount from the other; providing, it is true, that interest be paid to that other but as a grant, not as an obligation. No bonds or other instruments for payment of money are contemplated; the state does not borrow from any outside individual or corporation, but pursues its own method of apportioning its own cash, and not the proceeds of its own obligations.

The petition is dismissed.