NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1411-22

IN RE APPLICATION OF
BARBARA EAMES AND
WILLIAM EAMES PURSUANT
TO N.J.S.A. 1:7-1 AND
N.J.S.A. 1:7-4 SEEKING TO VOID
L. 2021, c. 375.

_____

> APPROVED FOR PUBLICATION
>
> **May 8, 2025**
>
> APPELLATE DIVISION

Argued February 3, 2025 – Decided May 8, 2025

Before Judges Sabatino, Gummer, and Berdote Byrne.

On appeal from the New Jersey Legislature, L. 2021, c. 375.

Christina Vassiliou Harvey argued the cause for appellants Barbara Eames and William Eames (Lomurro Munson, LLC, attorneys; Christina Vassiliou Harvey, of counsel and on the briefs; Jeffrey J. Niesz, on the brief).

Donna Arons, Assistant Attorney General, argued the cause for respondent State of New Jersey, Department of Law and Public Safety (Matthew J. Platkin, Attorney General, attorney; Donna Arons, of counsel and on the brief; Amna Toor, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

GUMMER, J.A.D.

On January 13, 2022, Governor Phil Murphy signed into law the Freedom of Reproductive Choice Act, L. 2021, c. 375.  Asserting the Act was unlawfully enacted, petitioners Barbara Eames and William Eames filed an application pursuant to N.J.S.A. 1:7-1 and -4, asking this court to invalidate it. We deny Count I of the application, in which petitioners challenge "the mechanics of the enactment of the law," In re McCabe, 81 N.J. 462, 467 (1980), and remand the remaining portions of the application to the Law Division.

The New Jersey Senate convened on January 6, 2022.  Among other business conducted that day, the Senate introduced S. 49, which was described in its accompanying statement as a bill that would "establish[] certain requirements related to the right to reproductive choice in New Jersey." Senate Health, Hum. Servs. and Senior Citizens Comm. Statement to S. 49 (Jan. 6, 2022) (L. 2021, c. 375).

The Senate gave the bill its first reading and referred it to the Health, Human Services and Senior Citizens Committee.  That Committee met the same day in the State House Annex, which had been reopened to the public subject to certain COVID-19-related procedures such as mask wearing, temperature screening, and proof of vaccination or a recent negative COVID-19 test.  After the Committee chairperson read a list of individuals and

organizations that had voiced their opposition to the bill with "[n]o need to testify," the Committee considered the bill and heard testimony about it from two members of the public.  After discussing the bill and hearing that testimony, the Committee reported the bill favorably to the Senate, without amendment, where it received a second reading.

The General Assembly also convened on January 6, 2022.  The Assembly introduced A. 6260, which was identical to S. 49, and gave the bill its first reading.  The Speaker of the Assembly notified the Clerk of the General Assembly that the Assembly Appropriations Committee was authorized to consider A. 6260, among other bills, on its January 6, 2022 agenda.  The Committee held a hearing that day.  Members of the public could not attend the Committee's meeting in person but were permitted to give oral testimony by telephone and video and to submit written testimony electronically.  Six people gave oral testimony.

Among those who testified before the Committee was petitioner Barbara Eames.  According to Barbara, both she and William had registered to speak, but she would speak on his behalf because he was on another call.[1]  In her testimony, Barbara complained the bill was being brought "to a committee in a

_____

[1]  Because of their shared last name, we use the parties' first names for clarity and ease of reading.  We mean no disrespect in doing so.

A- 1411-22

floor vote without adequate notice to the citizens" and that "S. 49 is being considered today without notice that you have defined during the waning days of this legislative session." Others who testified also complained about what they perceived to be a rushed process. One person stated she had not "had a chance to look at" the bill, while others appeared to have had a copy of it. Another person acknowledged the bill appeared similar to an earlier bill.

After the hearing, the Committee reported A. 6260 favorably to the Assembly, where it received a second reading.

At the end of the day, the Senate and General Assembly adjourned with the intent to reconvene for voting sessions on January 10, 2022.

On January 10, 2022, the Senate and General Assembly met with quorums declared in both legislative houses. The Senate gave S. 49 its third reading and passed the bill by a vote of 23-15. After the Senate vote, the Clerk of the General Assembly advised the General Assembly that the Senate had passed S. 49, among other bills, and had requested the Assembly's concurrence with the bills.

The Assembly gave S. 49 a first and second reading. By way of motion, the Assembly substituted S. 49 for its identical bill, A. 6260, and gave S. 49 a third reading. After a discussion about the bill, the Assembly voted and passed it by a vote of 45-24, with nine Assembly members abstaining. That procedure

A- 1411-22

is consistent with Rule 15:20 of the Rules of the General Assembly, which provides with respect to identical bills:

> 15:20.  Substitution; Identical Bill Rule.
> a. Whenever a Senate bill or resolution is passed by the Senate, delivered to the General Assembly, and an identical General Assembly bill or resolution has received second reading, is in the possession of the General Assembly, and at least one full calendar day has intervened since either or both of the identical bills or resolutions received second reading, the Senate bill or resolution may be substituted for the General Assembly bill or resolution and immediately moved to third reading.  Prime sponsors of the General Assembly bill or resolution shall be added as prime sponsors of the substituted bill or resolution.
> b. Two bills or resolutions shall be deemed identical despite having technical differences with respect to legal reference, text, punctuation, spelling, grammar or form, so long as these differences may be corrected by Legislative Counsel pursuant to Rule 15:29.
>
> [Rules of Gen. Assemb. of the State of N.J., R. 15:20 (2024-2025).]

The Legislature sent the bill to the Governor for his consideration.  On January 13, 2022, the Governor signed the bill into law as L. 2021, c. 375, codified at N.J.S.A. 10:7-1 to -2, N.J.S.A. 26:2S-39, N.J.S.A. 52:14-17.29hh, and N.J.S.A. 52:14-17.46.6q.

On January 12, 2023, petitioners filed with this court a notice of appeal, indicating they were appealing from a January 13, 2022 state agency decision of the Department of Law and Public Safety, and an "application pursuant to

N.J.S.A. 1:7-1 and -4 seeking original jurisdiction to invalidate P.L. 2021, c. 375."  In their application, petitioners assert:

> The bills underlying the enactment were introduced in both houses of the Legislature and assigned to committees without prior scheduling on either of the committee's calendars.  The final voting in each house was likewise never scheduled on the published weekly legislative calendar; in fact, in every respect, the presentation for legislative action on the bills was characterized by surprise, and in the intense pressure to wrap up consideration of hundreds of other bills before the close of session, many legislators complained, both from the floors of the two chambers and in the capital's hallways, that they had been allotted no time to study the reproductive rights bill or even to simply read it coherently.

Petitioners ask this court, due to that asserted "haste," to "scrutinize whether the constitutional authority was properly exercised by the Legislature as within the scope of this court's authority under Article III of the New Jersey Constitution and the doctrine of separation of powers" and to invalidate the Act.

In Count I of their application, petitioners assert the Act "was passed in violation of the intent of N.J. Constitution at Article IV Section IV Paragraph 6," in that "[t]he procedure utilized by the Legislature . . . violate[d] the notice required by our Constitution, the rules of the General Assembly, and In re Forsythe, 185 N.J. Super. 582 (App. Div. . . .)[, aff'd, 91 N.J. 141 (1982)]."  In Count II, petitioners contend the Act violates the separation-of-powers

6                                                          A- 1411-22

doctrine because the Act deems invalid any future "law . . . that is determined to have the effect of limiting the constitutional right to freedom of reproductive choice . . . ."  Petitioners argue that provision of the Act infringes on the courts' authority under Article III of our Constitution to interpret laws and limits the actions and powers of future legislatures in violation of Article IV of the Constitution.  In Count III, petitioners assert "[t]he Legislature overstepped its bound to create a constitutional right to an abortion by statute without abiding by the constitutional process for doing so."  In Count IV, petitioners argue the Act's "process to grant an exemption . . . to 'religious employers'" is unconstitutional.

In their merits brief, petitioners contend we should invalidate the Act because, in enacting it, the Legislature failed to abide by certain statutory requirements; violated Paragraph 6 of Section 4 of Article IV of our Constitution, which provides "[a]ll bills and joint resolutions shall be read three times in each house before final passage" and "[n]o bill or joint resolution shall be read a third time in either house until after the intervention of one full calendar day following the day of the second reading"; and "violated the Constitution in its failure to advise the public of its actions," citing Article I, Paragraph 18.  We limit our consideration of petitioners' arguments to those issues they addressed in their briefs because "[a]n issue that

A- 1411-22

is not briefed is deemed waived upon appeal," N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505-06 n.2 (App. Div. 2015), and because N.J.S.A. 1:7-1 permits us to consider only "the mechanics of the enactment of the law and not the unconstitutional validity of the law itself," McCabe, 81 N.J. at 467.

"[S]tatutes are presumed to be constitutional." In re M.U.'s Application for a Handgun Purchase Permit, 475 N.J. Super. 148, 190 (App. Div. 2023). "A presumption of validity attaches to every statute" and "'any act of the Legislature will not be ruled void unless its repugnancy to the Constitution is clear beyond a reasonable doubt.'" State v. Lenihan, 219 N.J. 251, 266 (2014) (quoting State v. Muhammad, 145 N.J. 23, 41 (1996)); see also Town of Secaucus v. Hudson Cnty. Bd. of Tax'n, 133 N.J. 482, 492-93 (1993) ("Only a statute 'clearly repugnant to the constitution' will be declared void." (quoting Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 222 (1985))).

When reviewing the constitutionality of a statute, courts "apply 'every possible presumption' in favor of the validity of a challenged statute, recognizing that it 'represents the considered action of a body composed of popularly elected representatives.'" State v. Higginbotham, 257 N.J. 260, 280 (2024) (quoting State v. Trump Hotels & Casino Resorts, Inc., 160 N.J. 505, 526 (1999)). "[T]he burden is on the party challenging the constitutionality of

the statute to demonstrate clearly that it violates a constitutional provision." Newark Superior Officers, 98 N.J. at 222. "That burden is onerous." Mack-Cali Realty Corp. v. State, 466 N.J. Super. 402, 424 (App. Div. 2021), aff'd o.b., 250 N.J. 550 (2022).

Those guiding principles apply equally in applications brought pursuant to N.J.S.A. 1:7-4. See In re Lamb, 67 N.J. Super. 39, 61 (App. Div.) (finding "[g]eneral principles of construction are not confined to the substantive provisions of a statute," court applies presumption of constitutionality in N.J.S.A. 1:7-4 application), aff'd o.b., 34 N.J. 448 (1961); In re Freygang, 46 N.J. Super. 14, 28 (App. Div.) (same), aff'd o.b., 25 N.J. 357 (1957). "If there is any permissible construction in favor of constitutionality, the action of the Legislature should be upheld." Lamb, 67 N.J. Super. at 60.

N.J.S.A. 1:7-1 provides:

> If, at any time within one year after any law . . . has been filed with the Secretary of State . . . , the Governor has reason to believe that any such law . . . was not duly passed by both houses of Legislature, or approved by the Governor or otherwise made effective as law in the manner required by the Constitution, he may direct the Attorney-General to apply to the Appellate Division of the Superior Court, to have the law . . . adjudged void. Thereupon the Attorney-General shall prepare, sign and prosecute the application.

A- 1411-22

The right to pursue such litigation is not limited to the Governor. N.J.S.A. 1:7-4 extends that right to private citizens as follows:

> Any two or more citizens of the State may, within the time prescribed by section 1:7-1 of this Title, present to the Appellate Division of the Superior Court an application, such as is authorized by said section 1:7-1 to be presented by the Attorney-General, and the court shall proceed thereon in the manner provided by sections 1:7-2 and 1:7-3 of this Title. The applicants may prosecute the application, and the Attorney-General may, if required so to do by the Governor, defend on behalf of the State.

That statutory scheme thus confers on this court "original jurisdiction . . . to inquire summarily as to whether any law . . . was not duly passed by both houses of the Legislature . . . in the manner required by the Constitution." McCabe, 81 N.J. at 467. In exercising that jurisdiction, "[o]ur sole quest is to determine whether the statute in arriving in its status as a law reached there by a route condoned by the Constitution." Forsythe, 185 N.J. Super. at 587.

"[A]pplicants who challenge the validity of a statute as not having been passed in the manner provided by the Constitution, must establish the truth of what they assert by clear and convincing evidence." In re McGlynn, 58 N.J. Super. 1, 27 (App. Div. 1959); see also In re An Act Concerning Alcoholic Beverages, 130 N.J.L. 123, 125 (Sup. Ct. 1943). "[C]ourts will not set aside the actions of the Legislature unless the unconstitutionality of what has been

10

done is manifest." McGlynn, 58 N.J. Super. at 28; see also Lamb, 67 N.J. Super. at 61.

Petitioners argue we should declare the Act void because the Legislature violated Paragraph 6 of Section 4 of Article IV of our Constitution when the General Assembly did not provide "one full calendar day" between its second and third reading of S. 49. But that argument is directly contrary to Supreme Court precedent.

In In re Forsythe, 91 N.J. 141, 144 (1982), as here, the Senate and Assembly considered substantively identical bills on the same day, January 12, 1982, giving them both a first and second reading. A few days later, on January 18, 1982, the Senate gave its bill a third reading and delivered it to the Assembly. Id. at 144-45. On receipt of the Senate bill, the Assembly moved to substitute it for the identical Assembly bill, pursuant to Rule 15:20 of the Rules of the General Assembly. Id. at 145. On the same day as the substitution, the Assembly gave the Senate bill a first, second, and third reading and passed the bill, after which it was delivered to the Governor to sign into law. Ibid.

Considering that procedure, which in all relevant respects reflects the procedure used in adopting the Act we now consider, the Court in Forsythe

found no violation of Article IV, Section 4, Paragraph 6. 91 N.J. at 144, 149-50. The Court explained:

> The constitutional mandate in Art. IV, § 4, par. 6, that there be one full calendar day between the second and third readings of a bill, is fully satisfied where the substantive contents of the bill remain unchanged in any manner and are before each house for the requisite period of time. Given that the purpose of the provision was to ensure that legislators be provided the opportunity to become familiar with the contents of a law as it was ultimately enacted, one may readily find compliance with the constitutional provision in this case. To the extent the constitutional requirements of Art. IV, § 4, ¶ 6 call for literal compliance, that mandate was met. See [Vreeland v. Byrne, 72 N.J. 292, 305 (1977)]. This conclusion follows from the fact that the legislators of each house had before them the identical substantive contents of the bill that became L. 1982, c. 1 for more than the prescribed duration and intervals of time. As noted, A-605 and A-711 were absolutely equivalent to one another in terms of substantive content. There was, in constitutional effect, one bill that was properly acted upon by each legislative house. The procedure followed to substitute A-711 for A-605 was simply a device to place before the Governor for his final action a single, passed bill. In this case that bill validly emerged from each house of the Legislature according to the prescribed constitutional path and was duly enacted into law.
>
> [Id. at 149-50 (emphasis added).]

Unpersuaded by petitioners' attempt to distinguish this case from Forsythe,[2] 91 N.J. 141, we perceive no reason to deviate from that Supreme Court precedent. Accordingly, we reach the same conclusion: having followed the procedure it utilized in enacting the statute at issue in Forsythe, 91 N.J. at 144-45, the Legislature did not violate Paragraph 6 of Section 4 of Article IV of our Constitution when it passed the Act.

Citing Article I, Paragraph 18 of our Constitution, petitioners contend the Legislature "violated the Constitution in its failure to advise the public of its actions." Article I, Paragraph 18 provides: "The people have the right freely to assemble together, to consult for the common good, to make known their opinions to their representatives, and to petition for redress of grievances." Petitioners have failed to demonstrate legally that that constitutional grant of rights to citizens imposed additional procedural

---

[2] For example, petitioners cite as one of the "distinct issues" with the passage of this Act the Governor's issuance of a state of emergency due to inclement weather on January 6, 2022, which was the day the Senate and Assembly conducted the first and second readings of their respective bills. Petitioners assert "many state employees were not present at the State House." It is true that the Governor issued a state of emergency on January 6, 2022. Exec. Order No. 279 (Jan. 6, 2022), 54 N.J.R. 202(a) (Feb. 7, 2022). However, the state of emergency did not go into effect that day until 10:00 p.m. Ibid. Petitioners also assert "COVID protocols in effect prevent[ed] the public from attending the Assembly Appropriations hearing." However, members of the public were permitted to give oral testimony by telephone and video and to submit written testimony electronically, and several of them, including petitioner Barbara Eames, took advantage of that opportunity.

13

requirements on the Legislature for the enactment of laws. See In re Reilly, 364 N.J. Super. 519, 523-24 (App. Div. 2003) (holding court would not read into the Constitution "by implication" any limitations on the Legislature's authority to enact a law). Nor have petitioners shown factually the Legislature somehow deprived them of their rights under Paragraph 18 of Article I to assemble, consult for the common good, make their opinions known to their representatives, or to petition for redress of grievances. To the contrary, the record demonstrates members of the public, including petitioners, had the opportunity to present testimony at the public hearings held by the Senate and Assembly and to otherwise make their opinions known to their representatives.

Petitioners also contend we should declare the Act void based on their assertion the Legislature failed to follow certain statutes in passing the Act. In making that argument, petitioners fail to establish this court has the legal authority to invalidate a legislative act based not on a constitutional but a statutory infirmity. Again, Supreme Court precedent is directly to the contrary.

The Supreme Court has repeatedly held a court cannot declare void a legislative act unless the act is clearly unconstitutional. See, e.g., State v. Buckner, 223 N.J. 1, 14 (2015) (finding "a legislative act will not be declared void unless its repugnancy to the constitution is clear beyond reasonable

doubt" (quoting Gangemi v. Berry, 25 N.J. 1, 11 (1957))); Lenihan, 219 N.J. at 266 ("[A]ny act of the Legislature will not be ruled void unless its repugnancy to the Constitution is clear beyond a reasonable doubt." (quoting Muhammad, 145 N.J. at 41)); Secaucus, 133 N.J. at 492-93 ("Only a statute 'clearly repugnant to the constitution' will be declared void." (quoting Newark Superior Officers, 98 N.J. at 222)).

This court has followed that precedent. See, e.g., In re Malinowski, 481 N.J. Super. 128, 147-48 (App. Div. 2025) ("It is well-settled 'that a legislative enactment will not be declared void unless its repugnancy to the Constitution is so manifest as to leave no room for reasonable doubt.'" (quoting State v. Murzda, 116 N.J.L. 219, 223 (E. & A. 1936))); Mack-Cali Realty, 466 N.J. Super. at 424 (same); Teamsters Local 97 v. State, 434 N.J. Super. 393, 415 (App. Div. 2014) (same); Lamb, 67 N.J. Super. at 61 (same); McGlynn, 58 N.J. Super. at 28 ("[C]ourts will not set aside the actions of the Legislature unless the unconstitutionality of what has been done is manifest."); Freygang, 46 N.J. Super. at 27-28 (same).

Petitioners cite one case in support of their assertion this court has the authority to void the Act based on solely purported statutory violations: In re Miller's Petition, 122 N.J.L. 176, 179 (Sup. Ct. 1939). But their reliance on that case, which predates the 1947 Constitution and the case law following it,

is misplaced. The constitutional nature of Miller's Petition is clear from the language that court used and from the analysis of that case by subsequent courts. The court in Miller's Petition described the matter before it as a petition to declare a statute "null and void for want of certain constitutional requirements necessary and peculiar to an act of this character." Id. at 177 (emphasis added). In a case decided months later by the same court, the court in In re Borg, 123 N.J.L. 104, 107 (Sup. Ct. 1939), analyzed Miller's Petition, referenced the constitutional provision at issue in that case, and found "in that case, the constitutional condition precedent of notice of intention was not complied with, and the attempted procedure of enactment without notice was simply nugatory because of having no foundation on which to rest." In McCabe, the Court acknowledged the applicants in Miller's Petition had sought to declare a statute void because the statute allegedly lacked "certain constitutional requirements." 81 N.J. at 468-69 (quoting Miller's Petition, 122 N.J.L. at 177).

And the applicable statutory language fails to support petitioners' assertion we can declare a law void solely based on an alleged statutory violation. Petitioners filed their application with this court pursuant to N.J.S.A. 1:7-4. That statute allows citizens to submit to this court an application "such as is authorized by [N.J.S.A.] 1:7-1." N.J.S.A. 1:7-1 enables

16

the Governor to apply to this court for the invalidation of a law "[i]f . . . the Governor has reason to believe that any such law . . . was not duly passed by both houses of Legislature, or approved by the Governor or otherwise made effective as law in the manner required by the Constitution . . . ." Thus, N.J.S.A. 1:7-1, from which citizens derive their authority under N.J.S.A. 1:7-4, permits only constitutional challenges by its own unambiguous language.

To support their assertion this court can declare a statute void based solely on a statutory infirmity, petitioners rely on N.J.S.A. 1:7-3. That statute authorizes this court, "if satisfied that the constitutional and statutory provisions relating to the enactment and approval of laws and joint resolutions have not been complied with, [to] adjudge the law or joint resolution or any part thereof to be void." But, under N.J.S.A. 1:7-4, we reach N.J.S.A. 1:7-3 only on applications "such as [are] authorized by [N.J.S.A.] 1:7-1." And N.J.S.A. 1:7-1 clearly authorizes only constitutional challenges.

We cannot read language into a statute that isn't there. See State v. Twiggs, 233 N.J. 513, 533 (2018) (holding courts "must be careful not to 'rewrite a statute or add language that the Legislature omitted'" (quoting State v. Munafo, 222 N.J. 480, 488 (2015))); Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 587 (2013) (holding that when interpreting a statute, "a court may not 'presume that the Legislature intended something

17

other than that expressed by way of the plain language'" of the statute (quoting O'Connell v. State, 171 N.J. 484, 488 (2002))).

We also cannot change the language of a statute. With its use of the word "and" before the phrase "statutory provisions" in N.J.S.A. 1:7-3, the Legislature clearly indicated its intention that an alleged statutory violation could not serve as a stand-alone basis for a court to declare void a statute. See Beaugard v. Johnson, 281 N.J. Super. 162, 169 (App. Div. 1995) ("The word 'and' connotes 'natural conjunctive import' while the word 'or' signifies 'natural disjunctive import.'" (quoting Pine Belt Chevrolet v. Jersey Cent. Power & Light, 132 N.J. 564, 578 (1993))).

In sum, having failed to demonstrate the Legislature violated the Constitution in the procedures it followed in passing the Act or that this court has the authority to declare the Act void based solely on alleged statutory infirmities, petitioners have failed to meet their burden with respect to their challenge to the procedures the Legislature followed in enacting the Act.

Petitioners ask us to remand their application rather than dismiss it, contending "there is another substantive challenge that must be reviewed by the trial court in the event the law is not voided." The Attorney General argues we should dismiss petitioners' application and not remand it because petitioners lack standing to challenge the constitutionality of the Act's

18

provisions. We conclude the better course here is to deny that portion of the application that was properly brought before us and remand the rest of the application to the Law Division.

After denying the petitioners' N.J.S.A. 1:7-4 application, the court in Borg, 123 N.J.L. at 106, dismissed the application, finding "that as a matter of procedure the present application is misconceived." With counts that clearly and obviously go beyond our authority under N.J.S.A. 1:7-4 in that they did not challenge "the mechanics of the enactment of the law," McCabe, 81 N.J. at 467 – and weren't even argued before us in petitioners' merits brief – we could reach the same conclusion here and dismiss petitioners' application in its entirety.

However, in McCabe, 81 N.J. at 469, the Court remanded an application after concluding it raised only substantive constitutionality issues, explaining:

> However, our holding that appellants' challenge to the constitutionality of [the statute at issue] may not be brought under N.J.S.A. 1:7-1 et seq. does not require that the application be dismissed. Rule 1:13-4(a) provides in part that "if any court is without jurisdiction of the subject matter of an action or issue therein * * * it shall, on motion or on its own initiative, order the action, with the record and all papers on file, transferred to the proper court." Appellants' challenge raises a viable issue cognizable in the Law Division and the matter should be transferred to that court which not only has the jurisdiction but also the facilities to hear the case.

19

Arguing against remand, the Attorney General challenges petitioners' standing. In McCabe, the petitioners questioned whether they had standing to prosecute a substantive constitutional challenge to a statute even though the Attorney General in that case, unlike here, had acknowledged the petitioners "probably [had] standing." Id. at 470. The Court held, "[s]hould this [standing] issue be raised, it will be for the Law Division to decide on a proper record." Ibid.

We follow that Supreme Court precedent and deny Count I of petitioners' application, in which petitioners challenged "the mechanics of the enactment of the law," id. at 467, and remand the remaining aspects of the case for further proceedings in the Law Division. The parties are to amend their pleadings to conform with Law Division procedures.

Denied in part; remanded in part. We do not retain jurisdiction.[3]

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Hanley*

Clerk of the Appellate Division

---

[3] At the end of their reply brief, petitioners ask this court to "permit discovery so that further evidence may be presented." We deny that request because it is substantively meritless and procedurally improper. See Pannucci v. Edgewood Park Senior Hous. – Phase 1, LLC, 465 N.J. Super. 403, 409-10 (App. Div. 2020) (court declines to consider issue the plaintiff did not present in her initial appellate brief and "improperly saved . . . for her reply"). We also deny as improper and meritless the pending motions, which were filed after the appellate oral argument. See M-003561-24, M-003772-24, and M-003821-24.

20                                                          A-1411-22