IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW-JERSEY,

AT NOVEMBER TERM, 1852.

---

### THE TRENTON MUTUAL LIFE AND FIRE INSURANCE COMPANY v. LEWIS PERRINE.

1. A corporation aggregate may maintain an action for a libel for words published of them concerning their trade or business, by which they have suffered special damage.
2. In alleging special damage, it is not always necessary to name the customers whose business has been lost by the defamation; but if the nature of the business is such as to render that impracticable, the loss of business may be alleged generally.

---

This cause came up on a demurrer to the plaintiff's declaration, the declaration alleging, by way of introduction, that the plaintiffs exercised and carried on the business of insuring lives, and also property against loss or damage by fire; and that their property, affairs, and concerns were conducted and managed by directors and officers, among whom were a president, vice president, and secretary, and that they were in high and deserved repute, estimation, and credit with the public, and were doing a large, profitable, and increasing business, and had acquired, and were then daily acquiring, large gains and profits therefrom, complained that the defendant,

well knowing the premises, but contriving and maliciously intending to injure the plaintiffs in their aforesaid business and in the repute and estimation of the public, and to prevent many and divers persons from insuring their lives and property in the said company, and to deprive the said company of the gains and profits arising therefrom, falsely, wickedly, and maliciously did publish, and cause and procure to be published, in a certain newspaper, called "the Weekly Trentonian," of and concerning the said Trenton Mutual Life and Fire Insurance Company, of and concerning the same company, in their aforesaid business, of and concerning the directors of the same company, of and concerning the president, vice president, and secretary of the same company, of and concerning the property and concerns of the same company, and of and concerning the conduct and management of the property and concerns of the same company, by the aforesaid directors and officers of the same company, a certain false, scandalous, malicious, and defamatory libel, containing therein the false and libellous matter following: of and concerning the said company, of and concerning the same company in their aforesaid business, of and concerning the directors of the same company, of and concerning the president, vice president, and secretary of the same company, of and concerning the property and concerns of the same company, and of and concerning the conduct and management of the property and concerns of the same company by their aforesaid directors and officers, that is to say : "For the Trentonian.—The Trenton Mutual Life and Fire Insurance Company ask the legislature for authority to increase the guarantied capital from $150,000 to $300,000, to effect inland and marine insurance, and make the charter perpetual. It would be well for the above company (meaning the said the Trenton Mutual Life and Fire Insurance Company) if the following questions were satisfactorily answered before applying for such great and unlimited powers and privileges. Has the Trenton company any authority to hold a guarantied capital? If none, is it not the object to get a legislative recognition of an authority that does not exist under their charter? In which did the guarantied capital consist on the first of Oc-

tober, 1849? Did not the president (meaning the president of the said the Trenton Mutual Life and Fire Insurance Company) give a mortgage on his property for $40,000, which was previously mortgaged for about $25,000, nearly to its full value? Did not the vice president (meaning the said vice president of the said the Trenton Mutual Life and Fire Insurance Company) give a mortgage on his Greek mansion for $30,000, which was previously mortgaged for $5,500, the full amount of original purchase? Did not one of the directors (meaning one of the said directors of the said the Trenton Mutual Life and Fire Insurance Company) give a mortgage for $30,000 on property previously mortgaged to nearly its full value? Did not the Insurance Company (meaning the said the Trenton Mutual Life and Fire Insurance Company) by the president, vice president, and directors, (meaning the said president, vice president, and directors of the said the Trenton Mutual Life and Fire Insurance Company) agree to pay to themselves (meaning the said president, vice president, and directors) an interest of six per cent. per annum on $150,000? Were the mortgages given for a valuable consideration? or were they (meaning the mortgages above mentioned) not fraudulent and void for the want of consideration? Had the members or stockholders of the insurance company, out of the directors, any knowledge of these transactions? Did they (meaning the said directors of the said the Trenton Mutual Life and Fire Insurance Company) not fraudulently conceal it, by keeping these mortgages from the record of the county, where all mortgages are recorded, and therefore open to the public? Had the insurance company (meaning the said the Trenton Mutual Life and Fire Insurance Company) one dollar invested on bond and mortgage on the first of October last? Did not the president (meaning the said president of the said the Trenton Mutual Life and Fire Insurance Company) certify, and the secretary (meaning the said secretary of the said the Trenton Mutual Life and Fire Insurance Company) swear to the certificate in August last (meaning the month of August, in the year of our Lord one thousand eight hundred and forty-nine,) that the insurance company had a guarantied capital of $150,000 on

bond and mortgages on good productive property in Trenton and South Trenton ? (thereby meaning that the president of the said the Trenton Mutual Life and Fire Insurance Company made a false and fraudulent certificate in relation to the affairs of the said company, and that the said secretary of the same company swore that the said certificate was true.) Did not the president, vice president, and directors (meaning the said president, the said vice president, and the said directors of the said the Trenton Mutual Life and Fire Insurance Company) loan to the company (meaning the said the Trenton Mutual Life and Fire Insurance Company) a large amount of Gas, Trenton Improvement, Water-power, Rolling-Mill, Insurance, and other stocks at par value, much of which is worthless ; and were they (meaning the said president, vice-president, and directors of the said the Trenton Mutual Life and Fire Insurance Company) not to receive six per cent. per annum for the loans ? Were these stocks transferred to the insurance company or not ? Won't some one tell us if the whole thing was not a fraud on the members of the company, and a swindle on the public ? A member of the company "—the defendant thereby then and there meaning to insinuate and have it understood that the officers and directors of the said the Trenton Mutual Life and Fire Insurance Company had acted fraudulently in the conduct and management of the property and concerns of the said company, and had thereby swindled the public.

To this declaration there was a demurrer by the defendant.

The question was argued before the CHIEF JUSTICE, and NEVIUS and OGDEN, Justices.

*W. Halstead* and *W. L. Dayton*, for defendant.

1. An action for libel or slander against a corporation aggregate will not lie, there is no precedent for it, and corporations are not within the reason of the principles on which such actions are maintained. *Holt on Libel* 73 ; *Bac. Abr. Tit. Slander ; Salk.* 418 ; *Ld. Ray.* 416 ; *Hawk. P. Cr. ch.* 73 ; 4 *T. R.* 126 ; 6 *Coke* 125 ; 4 *Bl. C.* 150 ; *Starkie on Slander* 161 ; 3 *Sel. N. Pr.* 924 ; 1 *Arch. N. P.* 422 ; 2 *Chitty* 635 ; 3

*Ch. Cr. Law* 868; *People* v. *Croswell,* 3 *John. C.* 354; 9 *J. R.* 214; 2 *Wils.* 403; 15 *Exch. R.* 437; 4 *Com. Dig. Libel A ;* 1 *U. S. Dig.,* 591, *Pl.* 195; *Commonwealth* v. *Turnpike Co.,* 2 *Virg. Cas.* 362; 10 *Exch.* 570, *Hening* v. *Power.*

2. These words are concerning the officers of the company individually, as to *their* conduct in conducting the affairs of the company. It accuses *them* of defrauding the company. They do not allege the libel to be concerning their trade and business.

Could a merchant maintain an action for slander upon the character of his clerk, because the employer's business might be injured by it?

The injury to reputation of plaintiff is the foundation of the action of slander, and to maintain libel where the special damage is the gist of the action there must be express malice. 2 *Chitty* 630, *note.*

3. No special damage is set out in this declaration, 1 *Arch. N. P.* 313; 2 *Chitty's Pl.* 626, *note ; Bull. N. P.* 9; 1 *T. R.* 110; 3 *B. & P.* 587.

*C. S. Green* and *Vroom,* for plaintiffs.

The demurrer must be sustained, either on the ground that the words are not libellous or that the plaintiffs cannot maintain such action.

1. This libel affects the business and trade of the company, and it is well settled that this action will lie for words affecting trade, if they do not affect personal character; as if the false representation is concerning the bread of a baker, the beer of a brewer, or the wine of a wine merchant, whereby their sales are injured.

2. This libel is not against the acts of the officers as individuals, but it relates to their acts in their official duties in managing the affairs of the company, and the true effect and object of the libel is to be gathered from the whole taken together.

3. There is no reason, except want of precedent, why a corporation may not maintain action for libel. They have the same right as individuals to redress against all injuries; and

the only question is, are they injured in their capacity as a corporation. *Ang. & Ames* 373.

*Williams* v. *Beaumont*, 10 *Bing.* 260, (25 *E. C. L. R.*) is authority that a company (not incorporated) may sustain an action for libel in the name of their chairman. The same principle will sustain this action. 2 *Eng. Law and Eq. R.* 406, *Eastern R. R. Co.* v. *Booth*.

4. Allegation of damages sufficient. 1 *Starkie on Slander* 440. Held sufficient for proprietors of theatre to allege that fewer persons attended.

The CHIEF JUSTICE delivered the opinion of the court.

The first and most material question raised by the demurrer in this case is, whether an action for a libel may be maintained by a corporation aggregate. The question is one, so far as I am aware, of first impression. No case was cited on the argument, nor have my subsequent researches led to one in which the point has been expressly decided. There is no precedent to be found in the books of a declaration in such an action. This fact, in itself, creates a strong presumption, though by no means conclusive, against the right of action. The weight to be attached to the mere absence of all precedent, will, however, be materially diminished, when it is remembered that the great body of the existing law in regard to corporations is the growth of the present century; that within the last fifty years it was first decided in Westminster hall that a corporation aggregate was liable *civiliter* for its *torts;* and, at a period still more recent, it was there first expressly adjudged that a corporation, like an individual, is liable to indictment. Perhaps a stronger presumption against the right of a corporation to maintain an action for libel may be found in the fact, that the prevailing sentiment of the profession is against it. All experience teaches that there are few more reliable tests of sound legal principle or correct practice than the pervading sentiment of an intelligent bar. These circumstances are grounds for caution in arriving at a different conclusion, though they certainly afford no reason for hesitating to tread wherever

sound principles may point the way, however new or untrodden the path.

If it be asked why, upon principle, an action may not be maintained by a corporation for libel, it will be difficult to find a satisfactory reply. It cannot be denied that a corporation may have a character for stability, soundness, and fair dealing in the way of its trade or business ; that this character is as essential, nay more so, to its prosperity and success than that of a private individual ; that banks, insurance companies, and money corporations generally, whose operations enter largely into the business of every community, depend mainly upon their reputation . in the community for their success, and often for their very existence. Nor can it be denied that the character of corporations is more easily and more deeply affected ·by false and malicious allegations than that of private individuals ; nor that the business of a corporation is more prejudiced by an evil name, by distrust of its responsibility, or of the character of its officers, than that of an individual. If, then, the reputation of a corporation and that of its officers be essential to its prosperity, if it may suffer pecuniary loss, and even the utter destruction of its pecuniary interests from false and malicious representations, why should it not be entitled to pecuniary redress. Wherever the common law gives a right or prohibits an injury, it also gives a remedy by action. 3 *Bl. Com.* 23.

And in all cases where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case to be repaired in damages. 1 *Com. Dig.* 272, " *Action upon the Case* " *A.*

And this general rule, says Starkie, embraces all cases where any *special damage* is immediately occasioned by a false communication of noxious tendency. 1 *Stark. on Slan.* (2d ed.) 2.

It may be admitted, without prejudice to the present inquiry, that no words spoken or written of a corporation are in themselves actionable, but that the corporation must always show *special damage* in order to recover. And the reason for the distinction may be found in the fact, that a corporation has not, like an individual, any character to be affected by the

libel, independent of its trade or business. It has no individual personal character, in which it can suffer an injury independent of its pecuniary affairs; and therefore, in an action for libel which affects its trade or business, the corporation must show that the words, not being in themselves actionable, have occasioned a special pecuniary loss or damage.

This consideration will relieve the question of another objection, which was urged with much zeal upon the argument, viz. that false and malicious words spoken or written of a corporation do not fall within any approved definition of libel or slander. By these, libel is defined to consist of personal imputations upon private men or magistrates, living or dead. For example, a libel is defined to be " any writing, picture, or other sign tending, without lawful excuse, to injure the character of *individuals." Cooke on Def.* 2.

It must be admitted that corporations do not fall within the scope of these definitions. But it is also true that the definitions are equally inapplicable to the subject of numerous actions brought by individuals, which are included under the general denomination of actions for slander. Thus an action may be maintained for slander of title of real or personal estate, which contains no personal imputation and does not affect the character of either individuals or magistrates, living or dead. *Gerrard* v. *Dickenson, Cro. Eliz.* 196 ; 1 *Stark. on Slan.* (2d ed.) 191.

So it is libellous for one newspaper to publish of another newspaper that it is low in circulation, inasmuch as it affects the sale and profits to be made by advertising. *Heriot* v. *Stewart,* 1 *Esp. R.* 437.

So words are actionable when they throw discredit on a particular commodity in which a party deals, as to say of a trader, " that he hath nothing but rotten goods in his shop." *Burnet* v. *Wells,* 12 *Mod.* 420 ; *Cro. Car.* 570. Or to charge a bookseller falsely with having published an absurd poem. *Tabart* v. *Tipper,* 1 *Camp. R.* 3o0. Or to say of a ship, that she is broken and unfit to proceed to sea. 2 *Chit. Pl.* (7th ed.) 641 *K.* Or to publish of a stage coach, that it is dangerous to travel in. *Cooke on Def.* 314.

The very recent case of *Swan* v. *Tappan*, 5 *Cush.* 110, was an action by an author for a publication disparaging the character of school books in which the plaintiff had a copy-right. The action failed for a defect in the declaration, but no doubt was expressed that, in principle, the action was sustainable. These instances are cited from a numerous and familiar class of cases, to be found in the books of actions, denominated actions for slander or libel, but which are in truth special actions on the case for the recovery of damages actually sustained by the plaintiff in consequence of the false and malicious representations of the defendant, affecting the plaintiff's property. They do not fall within any recognized definition of slander or libel; they contain no personal imputation. They do not affect the character either of individuals or magistrates; but, like any other *tort*, they occasion damage to the property of the plaintiff, and therefore they are actionable. In all these cases, the ground of recovery is special damage actually sustained in consequence of the slander; and it may be affirmed, as a general principle, that when damages have actually been sustained, the party aggrieved may maintain an action for the malicious publication of any untruth. *Sheppard* v. *Wakeman*, 1 *Lev.* 53 ; *Moore* v. *Meagher*, 1 *Taunt.* 43, *Per* Heath, J. ; 2 *Chit. Pl.* (*7th ed.*) 641, *g. note.*

It may be collected, says Starkie, from the definitions of text writers and the decisions of our courts, that, in general, an action lies to recover damages in respect of any false and malicious communication, whether oral or written, to the damage of another, in law or in fact. 1 *Stark. on Slan.* (*2d ed.*) 2.

In most of the cases cited, as has been said, the words relate solely to the property, and not to the character of the plaintiff. In others, however, the personal character of the plaintiff is involved ; and this constitutes the criterion whether the action can be maintained without special damage. Thus, in *Ingram* v. *Lawson*, 6 *Bing. N. C.* 212, which was an action by the owner and master of a vessel, which he had advertised for a voyage to the East Indies, for an alleged libellous publication in a newspaper charging that the ship was not seaworthy, Bosanquet, J., said, " the substantial question for the court is, whether the publication was a libel on the plaintiff, in his

business of a master mariner and ship owner, or merely amounted to a disparagement of the qualities of his ship. If it were merely the latter, then, as there is no allegation of special damage, nothing can be recovered. But if it was a libel on the plaintiff in his business, then whether malice were proved or not, the plaintiff would be entitled to recover damages for statements injurious to his character, and which, from their nature, must be prejudicial to his business."

Where the publication merely disparages the property, without affecting the individual character, as in the case of a libel upon a stage coach, or upon a school book, it is not easy to perceive why the action should not be maintained by a corporation as well as by an individual. The *gravamen* of the action is the injury done to the property of the plaintiff by the wrongful act of the defendant. No one but the owner of the property can maintain the action ; and a corporation being the owner, the injury to them is just as great : and it would seem, upon principle, that the right is just as clear in their behalf, as it would be in case of an individual. Certainly, in case of an injury to their property by any other tortious act, the corporation would have a clear right of action, and why not in case of an injury inflicted by the publication of malicious falsehood ? The *principle* upon which this right of action vests in the corporation has been judicially recognised in several cases. Thus it has been held, notwithstanding the general rule, that two cannot unite in an action for slander ; that a joint action may be maintained by two partners for defamatory words respecting their trade, if special damages are claimed by reason of the slander. *Cook* v. *Batchelor*, 3 *Bos. & Pull.* 150 ; 2 *Saund. R.* 116, *C. note* 2.

In the case of Williams, chairman of *The Hope Assurance Company* v. *Beaumont*, 10 *Bing. N. C.* 260, the point directly before the court was, whether, under a particular act of parliament, the action might be maintained by the chairman in behalf of the association, which was unincorporated. But that question necessarily involved the right of the associates themselves to maintain the action. Hence Chief Justice Tindall says, " I think this action is maintainable in the name of the

chairman.   The libel complained of is not a libel on the members of the company in their individual capacity, but a libel on the partnership in the way of its business, by attacking the mode in which that business is conducted. * * * * Now it is clear, from established cases, that for such a libel an action lies on behalf of a partnership.   And the only question is, whether, under the terms of this act of parliament, the partnership attacked may sue in the name of its chairman."   And Bosanquet, J., said, " Is this, then, a demand accruing to the Hope Assurance Company ?   The libel is clearly a libel on the company, in respect of the mode in which its business is carried on ; for any injury produced by such a libel, the company would have a claim on the offender, and the intention of the act was to substitute the chairman for the company, in the assertion of any claim on the part of the company. * * * * The damages are not to be recovered for what the learned sergeant has called a sentimental injury, but for an injury to the trade and business of the company ; and the proceeds will go to the company, as it exists at the time of the recovery." This case, it is conceived, is strongly and directly in point in support of the principle upon which the present action is founded.

I am of opinion that, upon principle, an action may be maintained by a corporation aggregate for words falsely and maliciously spoken or written of the company, in the way of its trade or business, or of the property and concerns of the company, or of the officers, servants, or members of the company, by reason of which special damage is sustained by the corporation.

The tendency of modern adjudications has been, as far as practicable, to treat corporations as natural persons.   They are now held liable as individuals, civilly and criminally, for *torts* committed by their agents or servants, while they are held amenable to the law for all injuries inflicted by their wrongful acts.   They should, upon principles of even-handed justice, be held entitled to its protection for all injuries suffered by them at the hands of others.

This conclusion is sustained by the well settled general prin-.

ciple, that corporations may sustain actions for all injuries done to the body corporate. And if an injury be done to one of the members, by which the body at large is put to any damage, it may sue on that account. 1 *Kyd on Corp.* 190; *Angell & Ames* (*4th ed.*) § 370.

And this authority furnishes a decisive answer to another objection that was urged upon the argument, *viz.* that the declaration is for a libel upon the officers and members of the company, and that the action should have been brought by them individually. But the authority is express, that if the corporation be put to damage by an injury to one of the members, the corporation may sue on that account, precisely as an individual may sue for damages sustained by him, by reason of an injury inflicted on his servant. It may be further answered to the objection, that the words may not be actionable in themselves, and may in no wise affect the business of the officer, though highly injurious to the business or interest of the corporation. The individual, therefore, can sustain no action, nor for his character, for the words are not *per se* actionable, nor for his property, for he has sustained no special damage. His trade or business is not affected. The right of action then, can only lie in the corporation, whose business is affected and whose property is injured by the publication respecting its officer.

Nor is it perceived that there is any ground for apprehension that the freedom of discussion will be unduly restrained, or any principle of public policy trenched upon, by maintaining the right of a corporation to an action for libel. It is doubtless the dictate of sound public policy that the conduct of all corporations, in whose faithful management the public are interested, the character of their officers and the management of their business, should at all times be open to the keenest scrutiny and to the most free discussion. It constitutes the most effectual safeguard for the protection of the community, and especially of the ignorant and unwary, from fraud and imposition. But the necessity of free and fair discussion can constitute no justification for injury inflicted by wanton and malicious libel. It must ever be borne in mind that the plaintiffs, in order to

recover in such action, must prove not only that the statement is false, and that they have sustained special damage, but the jury must be satisfied that the defendant was actuated by malice. When the statement is false and injurious, it is still open for the defendant to show that the publication was prompted by proper motives and made for justifiable ends. The question of malice is always a question of fact for a jury. *Swan* v. *Tappan*, 5 *Cush*. 111.

Under such protection, there is no reason to apprehend that the limits of free discussion will be unduly trenched upon or narrowed to the prejudice of the public welfare.

The declaration in the present case alleges that the libel was published of and concerning the company, in their business, and of and concerning the directors of the company, and of and concerning the president, vice president, and secretary of the company, and of and concerning the property and concerns of the company, and of and concerning the conduct and management of the property and concerns of the company by the aforesaid directors and officers of the company ; and the special damage is charged to have resulted to the company, in a loss of its business and a diminution of its profits, in consequence of the libel. In this there is no misjoinder of the causes of action, or substitution of improper parties. The libel must be regarded as one entire thing; and, as such, it relates obviously to the company, in the way of its business, to the character of its officers, to the property of the company, and to the management of its concerns, by reason of which special damage is alleged to have ensued to the company. It constitutes one ground of action, and the right of action is alone in the company, as the party aggrieved. It is lastly objected, that the special damage is not legally assigned. The declaration charges, that, by means of the libel, many and divers persons have been prevented and hindered from insuring their lives, and also from insuring their property in the said company, and have declined and refused to have any transactions with the said company in the way of their business, and that, by means of the premises, the receipts, gains, and profits of the plaintiffs, in their business, have been and are greatly lessened. The ob-

jection relied upon is, that the declaration should have stated by name what persons have refused to insure their lives and property in the company by reason of the libel, and from whom they would otherwise have received greater gains.

The general rule certainly is, that where the plaintiff alleges, by way of special damage, the loss of customers in the way of his trade, or the refusal of friends and acquaintances to associate with him, or the loss of marriage, or the loss of service, the names of such customers or friends, or the name of the person with whom marriage would have been contracted, or service performed, must be stated. 2 *Chit. Pl.* (7th ed.) 626, *note w* 641, *g. note w; Moore* v. *Meagher*, 1 *Taunt.* 39 ; 1 *Stark. on Slan.* 203.

But the rule is relaxed when the individuals may be supposed to be unknown to the plaintiff, or where it is impossible to specify them, or where they are so numerous as to excuse a specific description on the score of inconvenience. *Hartley* v. *Hening*, 8 *Term R.* 130 ; *Hargrave* v. *Le Breton*, 4 *Burr.* 2422 ; *Westwood* v. *Cowne*, 1 *Stark. R.* 172 ; 2 *Saund. R.* 411, *note* 4 ; 1 *Stark. on Slan.* (2d ed.) 441.

The assignment of damages in the present case is within the principle of the cases cited, and conforms substantially to the precedent in a somewhat similar case, to be found in *Cooke on Def.* 314.

The declaration is neither defective in substance nor in form in any of the particulars assigned as grounds of demurrer, and there must be judgment for the plaintiffs.