Pursuant to R.S. 32:18-1 the State of New Jersey through a commission duly constituted entered into an agreement or compact (hereinafter called Compact) with the State of New York for the purpose of controlling and abating pollution of the harbor, coastal and tidal waters surrounding and adjacent to the harbor of New York through cooperation of this State and the State of New York (and later the State of Connecticut), by which Compact the States of New Jersey and New York agreed to control future pollution and to provide for abatement of existing pollution in such waters in the adjacent portions of said states and to enact legislation to put and maintain said waters in a satisfactory sanitary condition and particularly to protect public health and to that end to create a district to be known as Interstate Sanitation District embracing coastal, estuarial and tidal waters within or covering portions of said states, particularly described in the Compact, and further to create an Interstate Sanitation Commission (hereinafter called Commission) with powers, duties and jurisdiction enumerated in the Compact, which Commission should consist of five commissioners from each state to be chosen as provided by the law of the state from which they are appointed. To further the objects and purposes of the *Page 538 
Compact, R.S. 32:19-1 et seq., was enacted providing for the appointment of commissioners from New Jersey and authorizing the Commission to make rules, regulations and orders regarding the pollution of coastal, estuarial and tidal waters of the aforesaid states and particularly describing the waters of New Jersey over which said Commission should have jurisdiction.
After study and investigation and conducting public hearings throughout the district, the Commission by resolution adopted November 2d 1938, as authorized by the Compact grouped the designated waters into classes as class A and class B waters and delineated such waters on a map on which class B waters comprised the Hudson (or North) River south of the George Washington Bridge, the East River west and south of Long Island Sound, Upper New York Bay and the Kills. The Compact provides that all sewage discharged or permitted to flow into class B waters shall first have been so treated as (a) to remove all floating solids and at least ten per centum of the suspended solids, or such additional percentage as may by reason of local conditions be necessary to avoid the formation of sludge deposits in those waters, and (b) to effect a reduction in the oxygen demand of the sewage effluent sufficient to maintain an average dissolved oxygen content in the tidal waters of the district and in the general vicinity of the point of discharge of the sewage into those waters, at a depth of about five feet below the surface, of not less than 30 per centum saturation during any week of the year.
Apparently the defendant municipalities, Weehawken, West New York and Union City were maintaining and operating sewage systems which discharged effluent and other polluting matter which had not been so treated as to conform with the requirements of the Compact, directly into class B waters of the Interstate Sanitation District, thus violating the provisions of the Compact and the law of this State, and before any order or direction from the Commission issued said municipalities entered into a joint contract with each other September 7th, 1938, for the construction, maintenance and operation of a joint outlet relief sewer and at a joint meeting *Page 539 
of said municipalities a resolution was adopted reciting said contract for a joint outlet relief sewer, the desire of the meeting to induce complainant Commission to issue a proper order in the premises and that said Commission was taking steps to abate pollution within its district, including the Hudson River, and resolving that said municipalities be recommended to establish an adequate sewage disposal plant to meet the requirements of the Department of Health of this State and the provisions of the Compact and committing the meeting to bring about the objectives and purposes of said resolution on or before October 1st, 1943. Thereupon the joint outlet sewer owners applied to the complainant Commission for a hearing pursuant toR.S. 32:18-11 and R.S. 32:19-3 in connection with the construction of the joint outlet relief sewer and a hearing was held September 30th, 1938, at which Commissioner Smith represented the Commission and it was ordered October 4th, 1938, that in reliance on the resolution adopted at the joint meeting of the municipalities the Commission finds the public interest will be best served by the construction of the joint outlet relief sewer. The municipalities constructed a joint sewer, but having failed to construct a sewage treatment plant the complainant Commission gave notice to the joint outlet sewer owners to appear before it for a hearing January 21st, 1946, and appearance was made by representatives of the defendant municipalities. Following such hearing an order or directive was issued by the Commission under date of February 6th, 1946, modifying the Commission's order of October 4th, 1938, so as to extend the requirements of that order to September 1st, 1947, provided steps be taken by the municipalities to acquire property for a sewage treatment works before May 1st, 1946, and execute and award a contract for construction of such works before September 1st, 1946. That order or directive is signed by a single commissioner and although it followed a hearing held by him alone, it and the proceedings at that hearing were considered subsequently by a majority of the Commission.
The defendants admit that they have not complied either with the order of October 4th, 1938, or the order of February 6th, 1946, and they offered no evidence to controvert the complainant *Page 540 
Commission's testimony that they are discharging sewage and other polluting matter into the class B waters contrary to the provisions of the Compact and statute. Complainant Commission seeks a mandatory injunction compelling defendants to cease from causing or permitting sewage and other polluting matter to be discharged by them into complainant Commission's sanitary district contrary to the provisions of the Compact and statute, and that said defendants be compelled to treat said sewage and other polluting matter prior to entry thereof into said district, so that the same shall meet the requirements of the Compact and the laws of this State and that a time be fixed for the operation of said treatment. The defendant municipalities oppose the granting of the relief sought on various grounds hereinafter stated.
(1) The Compact created the Interstate Sanitation District and described the territory of each state which should be embraced therein and it provided that the tidal waters within the district should be grouped into classes, namely class A in which the designated water areas are expected to be used primarily for recreational purposes, shellfish culture or the development of fish life, and class B in which the water areas are not expected to be primarily used for the aforesaid purposes. The statute,R.S. 32:19-3, authorizes the Commission to make rules, regulations and orders regarding the pollution of water areas in New Jersey which are therein particularly described, pursuant to which the Commission caused a map to be made whereon the waters of the sanitation district were designated as class A and class B waters and it is into the class B waters that the Commission seeks to restrain the defendant municipalities from discharging polluting sewage. For the defendants it is contended that there are coastal, estuarial and tidal waters of the State comparable with those specified or described in R.S. 32:19-3 which are arbitrarily excluded from the sanitation district therein described, and therefore the Compact and legislation are unconstitutional as being special or local laws enacted in contravention of article IV, section 7, paragraph 9 of our State Constitution, in that no public intention to apply for the enactment thereof *Page 541 
was given prior to their enactment. The excluded waters are claimed to be the Passaic River above its mouth at Newark Bay; Hackensack River above its mouth at Newark Bay; Raritan River above the Victory Bridge; Cheesequake Creek above the New York and Long Branch Railroad bridge at Morgan; Matawan Creek above the New York and Long Branch Railroad bridge at Matawan; Shrewsbury River above the passenger railroad bridge between Navesink Light and Highland Beach; Rahway, Elizabeth, Woodbridge and Navesink Rivers.
The object of the Compact as declared therein is to abate present and prevent future pollution of the coastal and tidal waters surrounding and adjacent to the harbor of the City of New York and to that end the Compact defined what waters of this State it was deemed necessary to be embraced in a sanitation district in which such pollution should be prohibited, and beside particularly describing such waters it further provided for the regulation of sewage discharged into any stream tributary to the waters of the sanitation district.
The burden of proving defendants' contention that there are waters other than those described in the Compact and statute which should have been included within the sanitation district established by the Commission is on the defendants, and I find no evidence to support such contention other than that defendants point to a report of the Treaty Commission for abatement of the pollution now under consideration, which Commission preceded the adoption of the Compact, wherein it was recommended by its research and engineering committee that certain estuaries and tidal waters of the rivers and bays which are described in the Compact and statute, as well as part of the Atlantic Ocean, be included within the jurisdiction of an Interstate Sanitation Commission, and such recommendation appears to describe, among others, the waters which defendants now contend should have been included with the waters described in the Compact and statute. But the recommendation was evidently not approved in whole by the framers of the Compact and I do not consider such recommendation as sufficient evidence to establish defendants' contention that the waters they claim were not included by particular *Page 542 
description in the Compact and R.S. 32:19-3 are so comparable with those specified in the Compact and the statute as to make the statute unconstitutional as local and special legislation.
Our statute, following the Compact, is a sanitary and police regulation in the general public interest for the elimination of pollution of one of the rivers of this State in a particular area, namely New York harbor, and the pollution sought to be corrected and prevented is not solely for the benefit of our citizens living immediately adjacent to the sanitation district particularly described by our statute but for the benefit of all citizens generally and is of statewide concern. A statute is not special or local merely because it authorizes or prohibits the doing of a thing in a certain locality. It is notwithstanding such fact, a general law if it deals with a matter of general concern. State v. Corson, 67 N.J. Law 178. In enacting the statute the legislature must be presumed to have given due consideration to all relevant facts in determining what waters of the State should be properly included within the sanitation district (State Board, c., v. Diamond Mills Paper Co.,63 N.J. Eq. 111; affirmed, 64 N.J. Eq. 793) and nothing having been shown to the contrary every possible presumption should be indulged in favor of the constitutional sufficiency of the statute. State Board, c., v. Newark Milk Co., 118 N.J. Eq. 504.
(2) The defendants contend that this court has no jurisdiction to enforce by mandatory injunction orders made by complainant Commission; that the remedy is at law by mandamus.
"A writ of mandamus will issue to compel the performance in a specified manner of ministerial duties so plain in point of law and so clear in matter of fact that no element of discretion is left as to the precise mode of their performance, but that as to all acts or duties depending upon a jurisdiction to decide questions of law or to ascertain matters of fact on the part of the officer or body at whose hands their performance is required,mandamus will not lie." And such a writ will not issue to dictate in advance how the discretion shall be exercised or the matter or fact decided. *Page 543 Mooney v. Edwards, 51 N.J. Law 479; Gleistman v. West NewYork, 74 N.J. Law 74; Atlantic Refining Co. v. Landis Township,120 N.J. Law 60. To meet the requirements of the Compact and the statute and orders of complainant Commission the defendants have much latitude of discretion in various matters, such as choice of how their sewage shall be disposed of and if by a joint outlet sewer, how such sewer shall be maintained and operated, where a sewage disposal plant shall be located, how sewage shall be treated and other problems necessary to be solved in abating their sewage pollution of the waters in question. To enable the complainant Commission to effect its efforts to control or eliminate pollution of the waters of the sanitation district our legislature by R.S. 32:19-4 specifically empowered procedure by the Commission in a court of competent jurisdiction of this State and conferred on such court the power to grant mandamus or injunction as the case might require, or any other relief appropriate to the case. Clearly the intent of the statute is to confer jurisdiction on this court to enforce action by municipalities to conform with proper orders or directions of complainant Commission. The general jurisdiction of equity to restrain nuisances dangerous to public health has long been recognized and the statute in question merely approves that jurisdiction and specifically extends it to a new class of cases wherein equitable relief is most appropriate. Carlisle v.Cooper, 21 N.J. Eq. 576; State Board, c., v. Diamond MillsPaper Co., supra; State Board, c., v. Newark Milk Co., supra.
(3) The defendants contend that the orders which complainant Commission seeks to enforce are void having been made by a single commissioner; that the statute, R.S. 32:18-6 and R.S.32:19-2, provides that no action of the Commission shall be binding unless at least three members of the Commission from each state shall vote in favor thereof.
The orders in question are two, one of October 4th, 1938, and the other of February 6th, 1946, both of which were in line with requests made by defendant municipalities. When the first order was made, Connecticut had not executed the Compact (and did not until 1941). That order followed *Page 544 
a meeting of September 30th, 1938, held by New Jersey Commissioner Smith at the request of defendant municipalities and without objection by defendants that but one member of the Commission was in attendance; it was signed by Commissioner Smith alone and approved the action of defendant municipalities in providing for a joint outlet sewer. A meeting of complainant Commission was held the following day at which there were present three commissioners representing New York and four commissioners representing New Jersey. The minutes of that meeting show that Commissioner Smith made a sufficient report of the hearing before him and that by unanimous vote it was resolved to confirm the order in question (erroneously stated in the minutes to be dated October 3d 1938).
The second order is a directive dated February 6th, 1946; it was also signed by Commissioner Smith alone and is a modification requested by defendant municipalities of the Commission's order of October 4th, 1938. The minutes of the meeting of the Commission held February 6th, 1946, show it was attended by five commissioners from New Jersey, four from New York and four from Connecticut, and the minutes refer to a meeting held January 21st, 1946, on notice to defendant municipalities and attended by their representatives, and show that after report by the Commission's chief engineer and the presentation of the stenographic record of the meeting of January 21st, 1946, and discussion of the situation, a resolution was unanimously adopted directing issuance of the order or directive. I conclude that both orders were issued by complainant Commission in accordance with the requirements of the Compact and statute.
(4) Defendants contend that the orders of October 4th, 1938, and February 6th, 1946, are invalid (a) because no public hearing was held or evidence taken prior to the issuance of those orders, and (b) because complainant Commission failed to make findings of jurisdictional facts necessary to support its orders.
The testimony shows that investigations and surveys of the water area in question were made by complainant Commission and that testimony was heard at many public hearings *Page 545 
of the Commission held for the purpose of classifying the waters within the sanitation district; that notice of such hearings was mailed to all municipalities within the area, including defendant municipalities, and that thereafter the Commission at its meeting held November 2d 1938, adopted a resolution reciting the facts and classifying said waters into class A and class B. It is contended that such classification is nugatory because only four members out of ten of the Commission were present at that meeting but the orders here under attack do not relate to classification of waters but pertain solely to the matter of pollution. The evidence further shows that prior to classification of the waters, a hearing was had before Commissioner Smith September 30th, 1938, solely with respect to a joint outlet relief sewer for the construction of which the municipalities had entered into a mutual contract in anticipation of legal proceedings by the complainant Commission to restrain them from discharging their raw sewage into the waters of the sanitation district. That meeting was held at the request of the municipalities and the aid they sought from the Commission was granted by said order of October 4th, 1938. That meeting was not a public meeting at which others than the particular municipalities were interested, therefore it was not necessary that public notice of it should be given. The evidence also shows a hearing before complainant Commission January 21st, 1946, at which all the defendant municipalities were represented by their officials, and that the order or directive of February 6th, 1946, was the result of and based on the proceedings at that meeting which, too, was not a public meeting in which the public at large had an interest and therefore entitled to notice. At the two hearings before the Commission the defendant municipalities had full opportunity to challenge the right or jurisdiction of the Commission to direct how and in what condition they should dispose of their sewage, but they did not and on the contrary indicated their intention to abate pollution. It is argued that since the order of October 4th, 1938, relates merely to the joint outlet sewer and does not purport to be an order required by R.S. 32:19-7 to cease pollution, and that since the order of February 6th, 1946, is merely *Page 546 
a continuation or extension of the order of October 4th, 1938, both orders must fall, but the order of 1946 is more than an amendment to the 1938 order in that in effect it directs the municipalities to acquire property for a site for a sewage treatment works and to enter into contracts for construction thereof by a fixed date. However, the subject-matter of the orders relates to the matter of pollution of the harbor waters and aside from the terms of those orders it appears to me that no preliminary hearing before the Commission is absolutely requisite before the Commission may institute court action to restrain pollution, but that the Commission may of its own motion direct such proceedings because R.S. 32:19-4 specifically authorizes it to institute court proceedings for the purpose of preventing violations of the statute whenever it appears to the Commission that any municipality within the sanitation district fails or omits to do anything required by the laws governing the control or elimination of pollution of said waters or the provisions of the Compact.
(5) The defendants maintain that this action is not one to abate a public nuisance; that it does not appear that the discharge of sewage into the waters of New York harbor by defendant municipalities creates a condition injurious to or likely to become injurious to the public health, a sine qua non
to equitable jurisdiction to restrain an alleged public nuisance arising from pollution.
The polluted condition of the waters of New York harbor was such as to call for joint action on behalf of the States of New York, New Jersey and Connecticut as far back as 1931, when commissioners were named to formulate the terms of a treaty between those states and the Federal Government for the purpose of eradicating contamination and pollution of the waters between those states, and a treaty or compact was entered into between New Jersey and New York in 1935 (in which Connecticut subsequently joined) reciting the increasingly serious pollution of the waters in the harbor area which constituted a grave menace to the health and welfare of the people living in such area, the control of which pollution is of grave importance to those people. R.S. 32:18-1. Of course, the pollution which existed in 1931 has increased *Page 547 
through the large growth in population in the area from which sewage is discharged into the waters, and the complainant Commission's proofs before me show that the defendant municipalities contribute to that pollution by discharging daily over 8,000,000 gallons of raw and untreated sewage into such waters, which sewage consists of fecal matter, disease-bearing material and other obnoxious, deleterious matter which certainly is a large contribution to the polluting matter discharged into the harbor by other municipalities and helps to cause the entire pollution to be a grave menace to health which affects not only the several million inhabitants of those states which entered into the Compact who reside adjacent to the sanitation district but is also a matter of statewide concern and therefore constitutes a public nuisance, and its prohibition is a matter of general public interest and was a compelling reason for adoption of the Compact.
(6) The further reasons urged by defendant municipalities why complainant Commission should be denied the relief sought are: (a) The date fixed by complainant Commission for defendant municipalities to abate pollution is unreasonable. (b) The Commission should adopt a comprehensive plan for abating pollution applicable to all municipalities discharging sewage into the sanitation district. (c) To compel defendant municipalities to build sewage treatment plants before such comprehensive plan is formulated is unreasonable, wasteful and ineffective. (d) No order should be made at this time when construction and property costs are exorbitant thus requiring the expenditure by defendant municipalities of "millions of dollars" especially when the defendants West New York and Union City have exceeded their debt limit.
No evidence was produced to show that the date fixed by orders of complainant Commission for completion of the work defendants agreed to perform in abating their sewage pollution was unreasonable, in fact the dates were virtually fixed by the municipalities, and since the defendants now deny the authority of complainant Commission to compel them to act in the premises, the date is immaterial. Prior to the institution of this action the defendant municipalities never claimed they were not discharging polluting sewage into harbor waters *Page 548 
or that they are not bound by the Compact and the statute to cease such pollution. At the hearing of this cause they made no attempt to show that the pollution to which they contribute is not a "grave menace to the health and welfare" of the people living in the sanitation district. On the contrary, before any order was issued by complainant Commission they proceeded on their own motion to consider methods they should adopt to meet the requirements of the Compact and the statute and they fixed or agreed to dates within which they would act to carry out such methods, and by the order of February 6th, 1946, they were given seven months time within which to let a contract for construction of a sewage treatment works, but they did nothing. Had they proceeded promptly to carry out their plans it is probable that the expense would have been much less than would necessarily be incurred to-day for the purpose; they knew in 1935, when the states entered into the Compact, that any day they were likely to be called on to act and they have delayed more than nine years since the first order of complainant Commission issued and practically nothing has been accomplished by them to abate the pollution they are helping to cause to the harbor waters. They should not now be heard to urge that because their sewage discharge is what they call small in comparison with similar discharge by other municipalities they should not be required to abate their contribution to the pollution until the other municipalities are required to do so (State Board, c., v.Town of Phillipsburg, 83 N.J. Eq. 402; affirmed, 85 N.J. Eq. 161) or until a general plan is adopted and put into operation which will embrace all municipalities in the area. R.S.32:18-11 authorizes complainant Commission to prescribe by order the reasonable date on or before which each municipality or other entity shall proceed to treat its sewage, and R.S. 32:19-4
authorizes complainant Commission to institute court proceedings against any person or municipal corporation who in its opinion is doing, or is about to do or permit anything in violation of its orders or the provisions of the Compact, which Compact and statutory provisions negative the idea that a plan applicable to all municipalities, persons and entities must be adopted by complainant *Page 549 
Commission before it can order separate court proceedings against each or any municipality discharging untreated sewage into the sanitation district, and the fact that construction of a sewage disposal plant will be costly and cannot be met by bond issue by two of the defendant municipalities are not valid defenses for failure of defendant municipalities to perform the Compact and legislative obligations imposed on them. State Department ofHealth v. North Wildwood, 95 N.J. Eq. 442; R.S. 40:63-140; R.S.40:14A-1 et seq.
Finally the individual defendants who were governing officials of the defendant municipalities at the time this action was instituted seek to have the bill dismissed as to them. I do not know whether at the time complainant Commission's orders were issued, all of them were in official positions they now hold, nor can I know that all or any of them will be in office at the time the decree to be entered herein against the defendant municipalities will become effective. The decree complainant seeks is really against the defendant municipalities alone commanding them and their offices to perform certain acts and such a decree may be enforced against the municipalities and against those persons holding municipal office at the time performance is to be made (In re Fort Lee, 108 N.J. Eq. 425) but not against any individual defendant who has ceased to hold municipal office. I think the individual defendants are not necessary parties to the bill and that the bill should be dismissed as to them.
It is my conclusion that a mandatory injunction should issue directing that within a time to be fixed by the court the defendant municipalities desist and refrain from discharging their sewage into the waters of the sanitation district unless and until such sewage is so treated as to meet the requirement of the Compact and statute. *Page 550