46 N.J. Super. 14 (1957)
133 A.2d 672
IN THE MATTER OF THE APPLICATION OF WALTER H. FREYGANG, LESLIE H. JAMOUNEAU, GEORGE J. DEYO, HELENE DELANEY, AND PROPERTY OWNERS' ASSOCIATION OF NEW JERSEY, INC., A CORPORATION OF NEW JERSEY.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1957.
Decided June 28, 1957.
*16 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Harry Weltchek argued the cause for the applicants (Messrs. Weltchek & Weltchek, attorneys; Mr. Paul R. Weltchek, on the brief).
*17 Mr. David C. Thompson, Deputy Attorney-General, argued the cause for respondent State of New Jersey (Mr. Grover C. Richman, Jr., Attorney-General, attorney; Mr. John F. Crane, Deputy Attorney-General, of counsel).
Mr. Leon S. Milmed argued the cause for amici curiae (Messrs. Milmed & Rosen, attorneys for Weehawken Township; Mr. Robert F. McAlevy, Jr., attorney for City of Hoboken; Mr. Nicholas S. Schloeder, attorney for North Bergen Township; Mr. James A. Tumulty, Jr., attorney for City of Jersey City; Mr. Samuel L. Hirschberg, attorney for Town of West New York; Messrs. Leon S. Milmed, James Rosen and Ralph P. Messano, of counsel).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This case comes before the court on an application under N.J.S.A. 1:7-4 seeking the judicial annulment of chapter 146, Laws of 1956 (N.J.S. 2A:42-56 et seq.), which authorizes certain municipalities to adopt rent control ordinances. The applicants claim the act is a special law regulating the internal affairs of a municipality or county, and that it was not duly passed by the Legislature or otherwise made effective by law in the manner required by the Constitution (Const. 1947, Art. IV, Sec. VII, pars. 8 and 10) and the implementing statutes (N.J.S.A. 1:6-1 et seq.).
A major portion of the applicants' brief and argument is devoted to an exposition of substantive as well as technical deficiencies in the passage of the act. We note, preliminarily, the limited nature of this proceeding. The statute invoked by the applicants, N.J.S.A. 1:7-1 et seq., permits an attack only upon the procedure of making laws, "on the machinery of enactment," and not upon the constitutional validity of their provisions. In re Borg, 123 N.J.L. 104, 106 (Sup. Ct. 1939); In re An Act Concerning Alcoholic Beverages, 130 N.J.L. 123, 124 (Sup. Ct. 1943). Tested by this limitation, the following issues argued by the applicants in support *18 of their claim of the unconstitutionality of L. 1956, c. 146, are not justiciable in this case:
(1) The act embraces more than one object, and those objects are not expressed in its title, contrary to Const. 1947, Art. IV, Sec. VII, par. 4.
(2) The act includes matter not properly a part of a special or local law, contrary to Const. 1947, Art. IV, Sec. VII, par. 10.
(3) The act improperly revives a prior law (the State Rent Control Act of 1953, N.J.S. 2A:42-14 et seq.), and the administrative regulations thereunder, by reference to its title only, contrary to Const. 1947, Art. IV, Sec. VII, par. 5.
In order better to understand the statute under consideration, a brief summary of rent control enactments since the expiration of federal controls on July 31, 1953 is indicated. Deeming it imperative that there be state rent control when the federal act expired, the Legislature, in view of the continuing housing shortage in certain areas, enacted the State Rent Control Act of 1953, L. 1953, c. 216. That law provided that rent control was to be operative in any municipality whose governing body adopted a resolution reciting that a housing space shortage existed and rent control was required for the protection, safety, health and general welfare of the inhabitants. Section 28 (N.J.S. 2A:42-41). The constitutionality of the 1953 act was upheld in Jamouneau v. Harner, 16 N.J. 500 (1954), certiorari denied 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955). And see Brookchester, Inc., v. Ligham, 17 N.J. 460 (1955); Stuyvesant Town, Inc., v. Ligham, 17 N.J. 473 (1955). The act was originally scheduled to expire on December 31, 1954, L. 1953, c. 216, § 38, but the date was by amendment extended to June 30, 1956. L. 1954, c. 260, § 12 (N.J.S. 2A:42-51). The latter statute provided that rent control thereunder was to be operative only in a municipality which on December 20, 1954 had in full force and effect a resolution theretofore adopted that rent control was required. The governing body of any such municipality might rescind such resolution at any time, but rent control could not thereafter be reinstated. L. 1954, c. 260, § 11 (N.J.S. 2A:42:54). The Supreme Court in *19 Addiss v. Logan Corp., 23 N.J. 142 (1957), upheld the constitutionality of the 1954 amendatory legislation.
As the date for the expiration of state rent control approached in 1956, the governing bodies of some 35 municipalities, convinced that a housing emergency still existed in their respective areas, became very much concerned over the possible effects of the lifting of controls. They therefore (pursuant to Const. 1947, Art. IV, Sec. VII, par. 10, and N.J.S.A. 1:6-10) individually petitioned the Legislature for the passage of special laws authorizing them to adopt local rent control ordinances. Art. IV, Sec. VII, par. 10 provides:
"Upon petition by the governing body of any municipal corporation formed for local government, or of any county, and by vote of two-thirds of all the members of each house, the Legislature may pass private, special or local laws regulating the internal affairs of the municipality or county. The petition shall be authorized in a manner to be prescribed by general law and shall specify the general nature of the law sought to be passed. Such law shall become operative only if it is adopted by ordinance of the governing body of the municipality or county or by vote of the legally qualified voters thereof. The Legislature shall prescribe in such law or by general law the method of adopting such law, and the manner in which the ordinance of adoption may be enacted or the vote taken, as the case may be."
N.J.S.A. 1:6-10 through 1:6-16 prescribes the procedure to be followed in initiating and submitting a petition to the Legislature for the passage of a private, special or local law regulating the internal affairs of a municipality or county. It is not denied that many of the municipalities failed to comply with these requirements. The applicants claim, on the basis of their examination of the files in the Secretary of State's office, that some municipalities filed their petitions with the General Assembly, some with the Senate, two with both houses of the Legislature, and six filed no petitions whatsoever. See N.J.S.A. 1:6-10, 1:6-15, 1:6-16. Further, a number of municipalities did not file with the Legislature a certified copy of the ordinance authorizing the filing of *20 their petitions. N.J.S.A. 1:6-16. Some failed to file proof of publication of a notice of intention to apply for the passage of such a law, N.J.S.A. 1:6-15, 1:6-16, 1:6-1. Only four municipalities, it is claimed, caused bills to be prepared to carry out the purposes of their petitions.
The Assembly Minutes of June 28, 1956 show the receipt of 30 separate petitions for special rent control acts. These, together with such bills as accompanied them, were referred to the Judiciary Committee under suspension of rules, with the direction that they not be printed. The Senate Journal for the same day makes no reference to the receipt of any petitions, but shows that 22 rent control bills were introduced on behalf of as many separate municipalities. The bills were given a second reading and then referred to the Committee on State, County and Municipal Government. At no time subsequent to the reference of the petitions and bills to it did the Assembly Judiciary Committee report thereon. Nor did the Senate Committee on State, County and Municipal Government report on the 22 bills.
What happened next was that on July 2, 1956 a "Notice of Intention to Apply for the Passage of a Special Law" was published in the newspapers of the several counties where the interested municipalities were located. Appended to the notice were the names of six assemblymen, none of whom had any official connection with the petitioning municipalities. The notice announced that the general object of the proposed law was "to authorize the municipalities wherein rent control was in effect and operation on June 30, 1956 and which have or shall have petitioned the Legislature for special laws, respectively, to authorize the adoption of rent control ordinances therein." The special law was to be inoperative in a municipality until adopted by ordinance, but no referendum was required. The law, as well as any ordinance adopted by its authority, was to expire December 31, 1957. The proposed legislation was to provide for the continuance of county rent control review boards, as set up under the State Rent Control Act of 1953, and for rent increases to landlords and *21 for decontrols in certain cases. Rent control under municipal ordinance was to continue "substantially in the same manner and form as it was in operation * * * on June 30, 1956."
Pursuant to this notice, Assembly Bill No. 591 was introduced on July 9, 1956 and given three readings on that day, as an emergency measure. The Speaker declared the bill lost when it received only 37 votes. (Const. 1947, Art. IV, Sec. VII, par. 10, requires passage of a private, special or local law by a two-thirds vote of the full Assembly membership, or 40 votes.) Thereafter, on July 16, 1956, the Assembly voted to reconsider the bill. The details of what followed are not recorded in the Assembly Minutes, but were brought out in the course of a summary hearing in this court held pursuant to N.J.S.A. 1:7-2, one judge sitting by consent of the parties. The bill was amended, read a second time, and proceeded to third reading on a vote declaring it an emergency measure. The Speaker put the question for enactment. After some delay, during which time the roll call was continued and the voting machine kept open, 39 votes were cast in favor of the bill. The Speaker finally announced the vote and declared the bill lost. Thereafter an assemblyman who had been absent when the question was put and throughout the period of voting, entered the Assembly chamber, asked how he was recorded, and upon being told he was recorded as not voting, requested that his affirmative vote be added. The Speaker complied and then announced that 40 votes having been cast in favor of the bill, it had carried. There was no motion to reconsider.
Rule 19 of the Standing Rules of the General Assembly provides that no member shall vote on any question "where he was not within the bar of the General Assembly when the question was put." No motion was made for the suspension of this rule, as required by Standing Rule 60. The Assembly Minutes, as well as the testimony at the hearing, show that there was immediate objection from the floor to the announced vote by which the bill had passed.
The Senate received Assembly Bill No. 591 on July 16 and gave it a first and second reading. It then adjourned, *22 and on reconvening on July 30, 1956, passed the bill on final reading. The Governor signed it into law on July 31, 1956.
In support of their attack upon L. 1956, c. 146 because the bill was not duly passed by the Legislature or otherwise made effective by law in the manner required by the Constitution and the implementing statutes, the applicants argue that
1. The bill did not receive the 40 affirmative votes required for passage, but only 39 valid votes. The 40th vote was improperly received  in view of Assembly Rules 19 and 60  after the Speaker had announced the vote and declared the bill lost.
2. There was no compliance with the requirements for public notice of intention to apply for the passage of the act. Const. 1947, Art. IV, Sec. VII, par. 8; N.J.S.A. 1:6-1, 1:6-15 and 1:6-16.
3. No petition for passage of the law was filed. Const. 1947, Art. IV, Sec. VII, par. 10; N.J.S.A. 1:6-15, 1:6-16.
4. The enactment of L. 1956, c. 146 in the form of an omnibus special law was contrary to Const. 1947, Art. IV, Sec. VII, par. 10.
5. The enactment did not result from a proper consideration of the petitions filed by the municipalities affected thereby.
The first, and to us the determinative, question posed is: Was L. 1956, c. 146 actually a special law regulating the internal affairs of a municipality or county, so as to call into play Art. IV, Sec. VII, par. 10 of the 1947 Constitution? In determining whether a law is general or special, the court will look to its substance and necessary operation, as well as to its form and phraseology. Erion v. Hoboken Board of Pension Commissioners, 11 N.J. Misc. 122, 126 (Sup. Ct. 1933), affirmed per curiam, 111 N.J.L. 243 (E. & A. 1933). The test to be applied in making such a determination has been considered in a wide variety of settings. See, for example, City of Passaic v. Consolidated Police, etc., Pension Fund Commission, 18 N.J. 137, 146 (1955); Sherwood v. Bergen-Hackensack Sanitary Sewer Authority, 24 N.J. Misc. 48, 54 (Cir. Ct. 1946), affirmed 135 N.J.L. 304 (E. & A. 1947); In re Prudential Insurance Co., 132 N.J. Eq. 170, 173-174 (Ch. 1942); Ervolini v. Camden County, 127 N.J.L. 473, 475 (Sup. Ct. 1941); Devlin v. Cooper, 125 *23 N.J.L. 414 (E. & A. 1940); City of Burlington v. Pennsylvania R. Co., 104 N.J.L. 649, 654 (E. & A. 1928); Wanser v. Hoos, 60 N.J.L. 482, 525 (E. & A. 1897); and see annotation to Const. 1947, Art. IV, Sec. VII, par. 9, in the Revised Statutes, Constitution, notes 5, 6 and 12. Apt language stating the test can be found in many opinions, but we need only quote Koons v. Board of Com'rs of Atlantic City, 134 N.J.L. 329 (Sup. Ct. 1946), affirmed per curiam, 135 N.J.L. 204 (E. & A. 1947):
"Ordinarily, the exclusions from the statutory class are determinative of the generality of the act in constitutional intendment. `A law is special in a constitutional sense when, by force of an inherent limitation, it arbitrarily separates some persons, places or things from others upon which, but for such limitation, it would operate. The test of a special law is the appropriateness of its provisions to the objects that it excludes.' Budd v. Hancock, 66 N.J.L. 133. And, in resolving the question, the substance and practical operation rather than the form of the statute control. * * *" 134 N.J.L., at page 333.
The Legislature is necessarily accorded a broad discretion in the area of permissible classification. City of Passaic v. Consolidated Police, etc., Pension Fund Commission, above, 18 N.J. at page 146; State v. Guida, 119 N.J.L. 464, 466 (E. & A. 1938). Within the range of this discretion the Legislature may enact a statute as a general law which operates "equally upon all of a group of objects which, having regard to the purposes of the Legislature, are distinguished by characteristics sufficiently marked and important to make them a class by themselves." City of Burlington v. Pennsylvania R. Co., above, 104 N.J.L. at page 654; Gundaker Central Motors, Inc. v. Gassert, 23 N.J. 71, 80 (1956). The term "general law," as Chief Justice Beasley said in Van Riper v. Parsons, 40 N.J.L. 1, 8 (Sup. Ct. 1878), does not import universality in the subjects or operation of such law. It has been said that a law is general if it embraces all and excludes none whose conditions and wants render such legislation equally appropriate to them as a class. Wanser v. Hoos, above, 60 N.J.L. at page 525.
*24 As applied to municipalities, the rule was expressed in Devlin v. Cooper, above, 125 N.J.L. at page 417, as follows:
"* * * It is well established that statutes may be operative and limited to specific types of municipalities and that the statutory classification of municipalities under a restricted description for applicability of the statute will not place the law within the inhibition of special legislation when the distinctions that typify the class are related to the object of the statute, and when such distinctions are substantial rather than illusory."
There have been a number of cases upholding the constitutional validity of statutes dealing with particular localities or particular classes of municipalities, even though they did not deal universally with all possible objects. E.g., Borough of Little Ferry v. Bergen County Sewer Authority, 9 N.J. 536, 545 (1952); Interstate Sanitation Commission v. Weehawken Township in Hudson County, 141 N.J. Eq. 536, 542 (Ch. 1948), modified 1 N.J. 330 (1949); In re Petition of Cleveland, 51 N.J.L. 319, 323 (Sup. Ct. 1889), affirmed 52 N.J.L. 188 (E. & A. 1889); Doughty v. Conover, 42 N.J.L. 193, 195 (Sup. Ct. 1880). Cf. Jamouneau v. Harner, 16 N.J. at page 521.
The act under consideration authorized the adoption of a rent control ordinance by any municipality where rent control was in effect on June 30, 1956, and which "heretofore"  i.e., before July 31, 1956, the effective date of the law (L. 1956, c. 146, § 18; N.J.S. 2A:42-73)  had petitioned the Legislature to pass a special law authorizing it to adopt such an ordinance. L. 1956, c. 146, § 1; N.J.S. 2A:42-56. We hold the statute to be a general act. It operates equally upon all of a group of municipalities which, "having regard to the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves." City of Burlington v. Pennsylvania R. Co., above. The selection of the municipalities in which the statute was intended to have applicability was not arbitrary or illusory; in our view, it *25 was an entirely reasonable classification embracing all and excluding none which appropriately comprised the class.
We consider the question of reasonable classification as having been entirely settled by Addiss v. Logan Corporation, above, 23 N.J. 142 (1957). That case, as already mentioned, involved the 1954 amendment (L. 1954, c. 260) to the State Rent Control Act of 1953 (L. 1953, c. 216; N.J.S. 2A:42-14 to 55). It provided in section 11 (N.J.S. 2A:42-54) that only those municipalities which on December 20, 1954 were operating under rent control by virtue of an existing resolution to that effect, were subject to the act. The defendant in Addiss argued that the 1954 amendment violated the constitutional provision prohibiting the passage of a general law embracing any matter of a private, special or local character. Const. 1947, Art. IV, Sec. VII, par. 7. The court found no merit in that conclusion, noting that the amendatory statute retained the feature of adaptability according to need found in the original act and upheld against constitutional attack in Jamouneau v. Harner, 16 N.J. 500 (1954). It noted further that
"* * * the 1954 enactment applied generally to all those municipalities which, on December 20, 1954, found the need for controls to exist; it treated all such municipalities alike and thus it was of general application within a given class." 23 N.J. at page 147.
See, also, the Jamouneau case, and the discussion of general and special laws in Bucino v. Malone, 12 N.J. 330, 340-342 (1953).
We pass the argument made by the State and amici curiae that L. 1956, c. 146 does not regulate the internal affairs of municipalities, and hence is a valid enactment. Holding as we do that the statute is a general law, it would be constitutional even though regulating the internal affairs of a municipality or county. Lynch v. Borough of Edgewater, 8 N.J. 279, 292 (1951); Borough of Jamesburg v. Hubbs, 6 N.J. 578, 584 (1951).
*26 The applicants' contention that L. 1956, c. 146 is a special law is not based primarily on the substantive provisions of the act, but on its form and the procedure followed in its enactment. We briefly restate the points they emphasize to establish their argument: (1) the preamble recites that the Legislature has received petitions for the passing of special laws and deems it in the best interest of the people to pass "1 special law"; (2) the notice of intention to apply for the passage of a special law, signed by six assemblymen, repeats the phrase "special law" a number of times; (3) section 1 of the act (N.J.S. 2A:42-56) limits its applicability to such municipalities as have "heretofore petitioned the Legislature * * * to pass a special law * * *"; and (4) the Speaker ruled that 40 votes were required for passage of Assembly Bill 591, which ruling was on motion sustained. These factors are cited as compelling evidence that the Legislature intended to enact chapter 146 as a special and not as a general law, and it is argued that this determination is binding on the court.
A legislative determination that an act is general or special is not binding on the court. The Court of Errors and Appeals in Wanser v. Hoos, above, 60 N.J.L. at page 525, said that
"* * * The question whether any particular statute is local or special must be determined not upon its compliance with a legislative classification, but upon whether, having regard to the character of the legislation and the limitation upon it contained in the act, the statute is or is not a general law as defined by the courts."
The many instances where statutes, all of them purporting to be general, have been struck down as special, are testimony enough to the continuing viability of this statement.
Only a superficial examination of the facts can give any support to the argument urged upon us that the Legislature intended to enact a special law, and nothing else. Viewed in the perspective of the circumstances existing at the time the Legislature had the rent control problem before it, the course of conduct it pursued is evident and understandable. *27 A statute like this should, of course, be interpreted in relation to its socio-economic setting; and the sense and reason of the law, rather than its literal terms, should be utilized in determining legislative intent. Caputo v. Best Foods, Inc., 17 N.J. 259, 264 (1955).
The Legislature was confronted with an emergent problem  the growing concern of many municipalities operating under rent control as they faced the imminent expiration of the State Rent Control Act of 1953. The deadline was midnight, June 30, 1956. N.J.S. 2A:42-51. These municipalities, working under the pressure of time, besieged the Legislature with their petitions and drafts of bills. The General Assembly and Senate at first reacted in the manner already described; they referred the petitions and bills to their respective committees. But the record shows that no further action was taken, in committee or on the floor of either house, on these particular matters. Instead, the Legislature sought its own general solution of local rent control. That solution took the form of Assembly Bill 591. Whatever the language or method of passage used, they do not convert an enactment which, in terms and effect, is general, into one which is special. If the Legislature seems in retrospect to have been over-cautious in what it did, this merely reflected the anxiety of those who supported local rent control to insure the validity of any measure they might adopt in quest of a reasonable answer to a critical problem.
It would be unreasonable to infer from what the Legislature did that the lawmakers were not in fact dealing with the rent control issue on a general basis. The applicants have mistaken legislative zeal to forestall a successful attack on the statute, for a determination that the act was not comprehensive in its application.
A statute is presumably constitutional, and the court should so construe it as to render it constitutional if it is reasonably susceptible to such a construction. Daly v. Daly, 21 N.J. 599, 604 (1956); Woodhouse v. Woodhouse, 17 N.J. 409, 416 (1955). A law will not be declared void unless its repugnancy to the Constitution is so manifest as to *28 leave no room for doubt. National City Bank of New York v. Del Sordo, 16 N.J. 530, 542 (1954). "There is a presumption of the constitutional sufficiency of a legislative enactment; and the onus of a showing contra is on him who interposed the challenge." Jamouneau v. Harner, above, 16 N.J. at page 515.
While utilization of the principles just stated is generally associated with the substantive provisions of a statute, their applicability need not be so confined. The procedural mechanism invoked in the enactment of L. 1956, c. 146. is not incompatible or inconsistent with a determination that the act is general rather than special. The precautionary measures taken by the Legislature only serve to heighten the responsibility placed upon the court to sustain the act if at all possible. The Legislature intended to insure the validity of the act, and not merely to enact special legislation. To adopt the applicants' position would frustrate the legislative intent on the basis of form rather than substance.
Since we have determined that the act here in question constitutes general legislation, failure to comply with the procedure required for the passage of a special, private or local act does not affect its validity. It therefore is unnecessary to consider the other points raised.
The application is dismissed.