837 A.2d 412

IN RE APPLICATION OF CHARLES V. REILLY, ROBERT A HUT-
TON AND SEAN REILLY TO CONTEST THE VALIDITY OF THE
ENACTMENT OF ASSEMBLY BILL 3359 (P.L.2001, C. 364).

Superior Court of New Jersey
Appellate Division

Argued September 30, 2003—Decided December 9, 2003.

520

Before Judges SKILLMAN, WELLS and FISHER.

*Charles V. Reilly*, appellant, argued the cause pro se.

*Coleen Louden*, Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey*, Attorney General, attorney; *Patrick DeAlmeida*, Deputy Attorney General and *Ms. Louden*, on the brief).

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

Three citizens of New Jersey brought this action pursuant to *N.J.S.A.* 1:7–1 to –7 for a declaration that chapter 364 of the Laws of 2001, subsequently codified as *N.J.S.A.* 18A:36–34, is void because it was not enacted in the manner required by the New

Jersey Constitution.[1] The applicants contend that chapter 364 is void because the Governor conditionally vetoed a substantially similar bill in the same legislative session and the Legislature did not adopt the changes recommended in the Governor's veto message or override the veto by the two-thirds votes of both houses required by the Constitution. We conclude that a bill passed by simple majorities of both houses of the Legislature and signed by the Governor is a valid law, even though a bill with the same or similar language was conditionally vetoed in the same legislative session and the Legislature did not concur with the Governor's recommended changes in the bill or override the veto by two-thirds votes of both houses. Accordingly, we reject this challenge to the manner of enactment of chapter 364.

In the 209th session of the Legislature, both houses passed Assembly bill A–2351, which required a school district to obtain written parental consent before conducting any survey, assessment or evaluation of a student which reveals information concerning certain sensitive topics, such as sexual behavior and attitudes. On January 16, 2001, Governor Whitman conditionally vetoed this bill. The details of the bill, the objections to the bill expressed in Governor Whitman's conditional veto message and the changes she recommended do not need to be described because they are irrelevant to the constitutional issue presented by this case.

The Legislature did not adopt amendments to A–2351 to meet Governor Whitman's objections or override her conditional veto by

---

[1] Our original jurisdiction under *N.J.S.A.* 1:7–1 to –7 is limited to a case in which it is claimed that a law "was not duly passed by both houses of the Legislature, or approved by the Governor or otherwise made effective as law in the manner required by the Constitution." *In re McCabe*, 81 *N.J.* 462, 467, 409 *A.2d* 1158 (1980). This original jurisdiction does not extend to a substantive attack upon the constitutionality of a law. *Id.* at 467–69, 409 *A.2d* 1158; *see also Meadowlands Reg'l Redevelopment Agency v. State*, 63 *N.J.* 35, 40–41 n. 1, 304 *A.2d* 545, *appeal dismissed*, 414 *U.S.* 991, 94 *S.Ct.* 343, 38 *L. Ed.2d* 230 (1973). The applicants' challenge to the validity of chapter 364 involves solely the procedures required for enactment of a law and thus falls under *N.J.S.A.* 1:7–1 to –7.

two-thirds votes of both houses. Instead, later in the same legislative session, Assembly bill A–3359 was introduced and subsequently passed by both houses. A–3359 was the same as A–2351, except that it omitted seven words included in the earlier bill.

By the time A–3359 passed both houses, Governor Whitman had resigned from office and Donald DeFrancesco had taken her place as Acting Governor. On January 7, 2002, Acting Governor De-Francesco signed A–3359 and it became chapter 364 of the Laws of 2001.

This action was subsequently brought to have chapter 364 declared void and to enjoin its enforcement by executive officials on the ground that it was not enacted in conformity with the New Jersey Constitution. The Attorney General has appeared in defense of the law. There is no dispute concerning the relevant facts.

The challenge to chapter 364 is based on Article V, Section I, subparagraphs 14(e) and (f), of the Constitution, which state in pertinent part:

(e) Upon receiving from the Governor a bill returned by him with his objections, the house in which it originated shall ... proceed to reconsider it. If, upon reconsideration, ... two-thirds of all the members of the house of origin agree to pass the bill, it shall be sent, together with the objections of the Governor, to the other house; and if, upon reconsideration, it is approved by two-thirds of all the members of the house, it shall become a law....

(f) The Governor, in returning with his objections a bill for reconsideration at any ... session of the Legislature, may recommend that an amendment or amendments specified by him be made in the bill, and in such case the Legislature may amend and re-enact the bill. If a bill be so amended and re-enacted, it shall be presented again to the Governor, but shall become a law only if he shall sign it within 10 days after presentation....

The applicants contend that, under these constitutional provisions, the only way a bill that a governor has conditionally vetoed can become law in the same legislative session is by two-thirds votes of both houses of the Legislature overriding the veto or by amendment and reenactment of the bill in conformity with the changes recommended by the Governor. Based on this inter-

pretation, the applicants argue that chapter 364 was not validly enacted because the Legislature passed A–3359 by simple majority votes of both houses without adopting the changes Governor Whitman recommended in conditionally vetoing A–2351, which was substantially the same bill. We reject this argument and hold that the provisions of Article V, Section I, subparagraphs 14(e) and (f), governing a legislative override of a gubernatorial veto or legislative acceptance of the recommendations contained in a conditional veto, do not circumscribe the constitutionally prescribed procedure for the enactment of legislation by simple majority votes of both houses of the Legislature and concurrence of the Governor.

Article IV, Section IV, paragraph 6 of the Constitution provides that any bill may be passed by "a majority [vote] of all the members of each body personally present and agreeing thereto," and Article V, section I, subparagraph 14(b)(1), provides that "[a] passed bill presented to the Governor shall become law ... if the Governor approves and signs it within the period allowed for his consideration." The Constitution does not contain any prohibition against enacting a bill into law in accordance with these basic provisions simply because the Governor has vetoed or conditionally vetoed another bill containing the same or similar language in the same legislative session. Moreover, such a significant limitation upon the power of the people's elected representative to enact a law should not be read into the Constitution by implication. *See In re McGlynn,* 58 *N.J.Super.* 1, 21, 155 *A.*2d 289 (App.Div.1959). If the constitutional drafters had intended to impose this limitation upon legislative power, they could have included a provision similar to Article IX, paragraph 7, governing submission of constitutional amendments to the electorate, which states:

> If at the election a proposed amendment [to the Constitution] shall not be approved, neither such proposed amendment nor one to effect the same or substantially the same change in the Constitution shall be submitted to the people before the third general election thereafter.

In the absence of this kind of express limitation upon the Legislature's power, with the Governor's concurrence, to pass into law a

bill that is the same or similar to another bill the Governor has vetoed in the same legislative session, the provisions of Article V, Section I, subparagraphs 14(e) and (f), governing gubernatorial vetoes and conditional vetoes should not be construed to limit the law-making power under Article IV, Section IV, paragraph 6 and Article V, Section I, subparagraph 14(b)(1).

The applicants rely upon a statement in *In re Forsythe*, 91 *N.J.* 141, 146, 450 *A*.2d 499 (1982), that "the number at the top" of a bill is a "mere accident[]," and that "[t]he content of the bill and its written expression constitute the essence of legislation" to support their argument that A–3359 should be considered the same bill as A–2351, which Governor Whitman had conditionally vetoed, and thus A–3359 could be enacted only by two-third votes of both houses or reenactment with the Governor's recommended changes. However, *Forsythe* involved different constitutional requirements and presented a different kind of issue than this case. *Forsythe* involved the requirements of Article IV, Section IV, paragraph 6, that "[a]ll bills ... shall be read three times in each house before final passage[,]" and that "[n]o bill ... shall be read a third time ... until after the intervention of one full calendar day following the day of the second reading." The applicants in that case sought a declaration of invalidity of a congressional redistricting law on the ground that the Assembly had passed the bill without the intervention of a full day between the second and third readings. However, the bill enacted into law was substantively identical to another bill that had been given first and second readings in the Assembly six days earlier. *Id.* at 144, 450 *A*.2d 499. Consequently, the Court concluded that the purpose of the Article IV, Section IV, paragraph 6, requirement that one full day intervene between second and third readings, which is "to afford an adequate opportunity to the members of the Legislature and of the public to become acquainted with and study bills that eventually might be enacted into law[,]" *id.* at 148, 450 *A*.2d 499, had been "fully satisfied" because "the substantive contents of the bill remain[ed] unchanged in any manner and [had been] before each house for the requisite period of time." *Id.* at 149, 450 *A*.2d 499.

*Forsythe* does not indicate that the term "bill" should be construed to have the same meaning in every provision of the New Jersey Constitution or that any bill containing the same or similar language as a previous bill should be deemed to be the same bill for all purposes. To the contrary, the Court stated that the sole issue in *Forsythe* was "the meaning to be imputed to the term 'bill' as used in [the constitutional provision requiring the intervention of a calendar day between the second and third readings of a bill]." *Id.* at 146, 450 *A.2d* 499. Most importantly, the Court recognized that in deciding this issue, as with any other question of constitutional interpretation, a court should be "guided by the purpose and intent" of the particular constitutional requirement involved in that controversy. *Id.* at 148, 450 *A.2d* 499. Therefore, the validity of chapter 364 does not turn on a mechanistic application of the meaning the Court accorded the word "bill" in *Forsythe* in determining whether there had been a one-day interval between the second and third reading of the law challenged in that case, but rather on whether the process by which chapter 364 was enacted into law conformed with the objectives of the provisions of Article V, Section I, subparagraphs 14(e) and (f), governing gubernatorial vetoes and conditional vetos.

The primary objective of Article V, Section I, paragraph 14, was to strengthen the Governor's power in the legislative process by requiring two-thirds votes of both houses of the Legislature to override a gubernatorial veto, rather than the simple majorities required under the prior Constitution. *See McGlynn, supra,* 58 *N.J.Super.* at 15–16, 155 *A.2d* 289. The Governor's authority under subparagraph 14(f) to veto a bill conditionally, with recommended amendments that would satisfy the Governor's objections, complements the Governor's enhanced power in the legislative process under the 1947 Constitution by establishing a procedure under which the Governor and Legislature may reach agreement concerning the contents of a proposed bill. However, there may be circumstances where the Legislature is unwilling to accede to all the changes recommended in the Governor's conditional veto

message and the only form of bill satisfactory to both the Legislature and the Governor is one that does not conform either to the originally passed bill or the amended bill recommended by the Governor. In that event, a new bill containing compromise language agreed to by the Legislature and Governor would have to be introduced and passed for the law to be enacted. But if the applicants' argument that a conditionally vetoed bill may be enacted only by legislative concurrence with the Governor's recommended changes or an override of the veto by two-thirds votes of both houses were correct, the Legislature would lack constitutional authority to pass such a new bill. The result would be legislative paralysis; the Legislature and Governor would be prohibited from enacting a bill into law simply because they had been unable to agree upon its precise language at a prior stage in the legislative process. Thus, the interpretation of Article V, Section I, subparagraphs 14(e) and (f), urged by the applicants is inconsistent with the essential objective of the constitutional authorization for a Governor to conditionally veto a bill with recommended amendments, which is to facilitate gubernatorial and legislative agreement upon the contents of legislation considered to be in the public interest.

In *McGlynn, supra,* 58 *N.J.Super.* at 21–22, 155 *A.*2d 289, this court rejected an argument concerning the effect of a Governor's conditional veto similar to the applicants' argument in the present case. In *McGlynn,* the Legislature had been unwilling to accede to all the recommended amendments contained in a Governor's conditional veto, but agreed with some of those proposed amendments. To enact a law that was different from either the original bill or a bill containing all the amendments recommended by the Governor, the Legislature first passed the original bill by the two-thirds votes of both houses required to override the Governor's veto and immediately thereafter passed a new bill with the amendments recommended by the Governor with which the Legislature agreed. The Governor subsequently signed the new bill containing those amendments. The parties challenging the law contended that the Legislature's two-thirds override vote, enacting the

original bill into law, and nearly simultaneous passage of the second bill, amending the original bill, was a subterfuge designed to circumvent the conditional veto provisions of Article V, Section I, subparagraph 14(f), and that the two bills should be viewed as a single bill that had not been enacted in conformity with the Constitution. *Id.* at 16, 155 *A*.2d 289. However, we rejected this argument, concluding that both bills had been validly enacted because the original bill had been passed by two-thirds votes of both houses in accordance with Article V, Section I, subparagraph 14(e), and the bill amending the original bill had been enacted by the regular legislative process of majority votes of both houses and the Governor's signature. Thus, we rejected a construction of Article V, Section I, subparagraphs 14(e) and (f), that would have imposed a straightjacket on the legislative process. *See id.* at 19–22, 155 *A*.2d 289.

As in *McGlynn,* we are unwilling to create an artificial barrier to enactment of legislation that the Legislature and the Governor agree is in the public interest by construing Article V, Section I, subparagraphs 14(e) and (f), to prohibit the enactment of a bill that is the same or similar to a bill that the Governor has vetoed or conditionally vetoed in the same legislative session. A governor who has vetoed a bill may conclude later in the same legislative session, based on a change in public conditions or other reasons, that enactment of that bill or a similar bill would be desirable. However, if the applicants' construction of Article V, Section I, subparagraphs 14(e) and (f), were correct, the previously vetoed bill or any similar bill could not be enacted into law until the next legislative session despite the Governor's change of mind.

Furthermore, as this case illustrates, there may be a change in the occupant of the office of governor during a legislative session, and the new Governor may take a different view of the desirability of particular legislation than his or her predecessor. However, the acceptance of the applicants' construction of Article V, Section I, subparagraphs 14(e) and (f), would prohibit the new Governor from signing a bill into law that is the same or similar to a bill

vetoed by the prior Governor, thus preventing the new Governor from exercising the full powers of the office and thwarting enactment of legislation that both the Governor and the Legislature believe to be in the public interest.

Therefore, we conclude that a bill passed by simple majorities of both houses and signed by the Governor is a valid law, even though a bill with the same or similar language has been conditionally vetoed in the same legislative session and the Legislature did not concur with the Governor's recommended changes or override the veto by two-thirds votes of both houses. Accordingly, we reject the applicants' claim that chapter 364 of the Laws of 2001 is void and dismiss their petition.